254 So.2d 515 (1971)
William M. SMITH
v.
DEPARTMENT OF PUBLIC SAFETY of the State of Louisiana.
No. 4550.
Court of Appeal of Louisiana, Fourth Circuit.
November 8, 1971.
*517 John M. Holahan, New Orleans, for plaintiff-appellant.
Willie D. Maynor, Baton Rouge, Jodie W. Stout, Rayville, for defendant-appellee.
Before REDMANN, STOULIG and BOUTALL, JJ.
*518 REDMANN, Judge.
Petitioner Smith appeals from a district court judgment which, on a hearing on his application to that court, upheld respondent Department's revocation (suspension) for one year of his automobile driver's license, R.S. 32:414 subd. B, (and therefore also his vehicle registration, R.S. 32:896, subd. A) because of a second conviction of driving while intoxicated.
No facts are disputed. Constitutional issues are urged.

Due Process
Of least significance is petitioner's first argument that La.Const. art. 1 § 2's due process requirement is violated by the unfairness of respondent's form DLD 31's order to surrender the permits "immediately", with much other advice but with no advice to the recipient of his right of judicial review. However valid this complaint in theory, in practice the form's unfairness did not adversely affect this petitioner, who did seek counsel and obtained judicial review.
But petitioner makes the more substantial contention that Art. 1 § 2 is violated by the procedure of R.S. 32:414, which requires revocation without an administrative hearing, and places the burden of going to court and thus apparently the burden of proof upon the citizen rather than upon the state.
The right-privilege argument is raised but is immaterial to the question whether due process must be afforded in the matter of revoking or suspending a driver's license. La.Const. art. 1, § 2 prohibits deprivation of "life, liberty or property, except by due process of law." The constitutional prohibition is unqualified: our liberty may not be taken, not in any degree, except by due process. Accordingly the prohibition against driving a car entailed in a licensing statute can only be constitutionally effective if the substantive due process suited to legislative enactment is had: the circumstances justifying a refusal to license a person must be reasonable and impartial (cf. Const. art. 1 § 6). Once given a constitutional licensing statute, then revocation of a license once issuedtaking away a person's liberty even to that slight degreeis prohibited by art. 1 § 2 "except by due process of law." The same is true under U.S.Const. Amend. 14; Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971).
Essential to due process are "notice and an opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case." Mongogna v. O'Dwyer, 204 La. 829, 16 So.2d 829 (1943). See also Bell, supra.
It may be observed that in a DWI prosecution under R.S. 14:98, the indictment may allege the prior offense and the sentence may adjudicate that the offense was a second (or subsequent) offense. In the absence of such an allegation the indictment will not support a sentence as a second offender; State v. Montgomery, 250 La. 326, 195 So.2d 285 (1967). A driver charged as a second offender has notice and hearing on the question whether it is a second offense, at the time of trial of the second offense, and as to him this due process requirement is met if he is convicted as a second offender.
But the stipulated fact here is only that there was a conviction on a second occasion, and not that petitioner was charged and convicted as a second offender. We interpret R.S. 32:414 subd. B(2) as requiring revocation irrespective of whether the second conviction adjudicated that it was the second. But due process requires notice and the opportunity for hearing on that issue before revocation, except in emergency situations; Bell, supra. Where the trial of the second offense did not afford notice and hearing on that issue it must be available either at an administrative level or by court review prior to suspension.
*519 It appears to us that subd. D(1) of § 414 authorizes an administrative hearing in cases like petitioner's. This power would be appropriately utilized to afford hearing on the simple issues whether petitioner is the same person who was previously convicted and whether the earlier conviction was for DWI. But subd. D does not require an administrative hearing, although it would seem simpler and cheaper for all parties, and more convenient for the citizen, and more rapid and efficient for the Department, for the notice of suspension to allow a brief period within which the citizen might ask for a hearing on the limited issue whether the conviction is a second (or subsequent) one. Rather it is subd. E of the statute by which the legislature assures hearing to the citizen, albeit by the costlier and slower process of court action.
The possibility of court action prior to effective suspension does, nevertheless, satisfy the minimal due process requirement of La.Const. art. 1 §§ 2 and 6, and of U.S. Const. Amend. 14, and petitioner here in fact had a hearing in court which reviewed the revocation prior to the revocation's effectiveness.
We conclude that, although the burden of proving that a DWI conviction is a second one belongs to the state (and here was met), the burden of going to court does not shift the first burden to the driver. The delicate sense of due process which petitioner argues should prevent the state even from requiring him to initiate court proceedings in order to obtain a hearing is not wholly without sympathy, but it has not been the view of federalBell, supranor of state courts (especially where the purpose of license revocation is reasonable protection of public safety, and not penalizing the licensee), see Parker v. Board of Barber Exam., 84 So.2d 80 (La.App.1955); Pettit v. Penn, 180 So.2d 66 (La.App.1965), writ refused 248 La. 696, 181 So.2d 397. Petitioner's view is one that commends itself to the administrative agency and to the Legislature, but under the cited interpretations is not commanded by the constitutions.
Petitioner here was not denied due process.

Ex post facto
Petitioner argues that the 1968 amendment of R.S. 32:414 places that statute in the position of attempting to impose by 1968 law a penalty for his 1966 first offense, in violation of La.Const. art. 4 § 15, prohibiting ex post facto laws.
To the fact that second offender revocation was already provided by law before 1966, petitioner argues that an amendment and reenactment repeals the prior law; Flournoy v. Walker, 126 La. 489, 52 So. 673 (1910). But it is the later and not the earlier offense which is penalized in multiple-offender laws, which may constitutionally impose a greater penalty for a second offense even if at the first offense there were no multiple-offender law; State v. Cass, 188 La. 606, 177 So. 682 (1937). The earlier offenses are not an element of the latest offense but only a factor in determining penalty; State v. Washington, 248 La. 894, 182 So.2d 528 (1966).
Thus, whether petitioner's revocation comes under R.S. 32:414 as repealed and re-enacted, or as merely amended, by Act 597 of 1968, the revocation is not the result of ex post facto legislation.

Title-Body
La.Const. art. 3 § 16 requires "Every statute enacted by the Legislature shall embrace but one object, and shall have a title indicative of its object. * *" To the extent that the body of an Act contains provisions not indicated by the title, the act is unconstitutional and cannot be given effect; State v. Welkner, 259 La. 815, 253 So.2d 192 (1971).
Petitioner argues that the title to Acts 1968, No. 597, which amended R.S. 32:414, *520 speaks of license revocation upon evidence of convictions "beyond the second offense" while the body of the Act provides revocation as to the "second or subsequent offense".
Were there no previous law, "an act to penalize offenses beyond the second" would plainly violate art. 3 § 16 if its body penalized second offenses.
However, the title shows the object of Act 597 is "to amend" an existing statute, "to provide that the Department shall revoke * * * upon receiving satisfactory evidence of the conviction * * * on charges beyond the second offense * * *." The worst that can be said, in respect to this particular, is that the title may be ambiguous.
The existing statute (as last amended by Acts 1966, No. 443) provided for revocation on conviction "on the second offense" (emphasis added), but did not expressly refer to the third, fourth or later offense. Act 597's title would indicate to Legislators aware that "second" conviction brought revocation under existing law, either than the amendment would eliminate revocation on second conviction and allow it on third and subsequent ones only; or that, in addition to the already-provided revocation on "second" conviction, the amendment would now expressly provide revocation for convictions "beyond the second".
Construing the title to say that its object is "to amend" (1) to repeal the former revocation on second offenses, and (2) to provide revocation on third and later offenses, we would have to find that the body effectuates only the latter amendment. Art. 3 § 16 merely prohibits the body being broader than the title, and does not make the title become the law. The wording that becomes law is that not of the title but of the body, i. e., that portion of the Act following the enacting clause required of laws by Const. art. 3 § 7. Thus any purpose of Act 597 to amend R.S. 32:414 to repeal revocation on second offense simply has not been accomplished because the body of the Act does not make such an amendment. The prior law remains, unamended in this particular.
Acts 1968, No. 597, is not violative of Art. 3 § 16 insofar as the matter here at issue is concerned.
The judgment is affirmed.