298 So.2d 312 (1974)
Burnis H. HARRISON
v.
STATE of Louisiana, DEPARTMENT OF PUBLIC SAFETY, DRIVERS LICENSE DIVISION.
No. 6306.
Court of Appeal of Louisiana, Fourth Circuit.
July 3, 1974.
Rehearing Denied August 1, 1974.
Writ Refused October 4, 1974.
*313 Greenberg, Cohen & Dallam, Roger I. Dallam, Gretna, for plaintiff-appellant.
Foye L. Lowe, Jr., Dept. of Public Safety, Baton Rouge, for defendant-appellee.
*314 Before SAMUEL, STOULIG and MORIAL, JJ.
STOULIG, Judge.
Plaintiff, Burnis H. Harrison, filed this suit to have LSA-R.S. 32:667 and LSA-R.S. 32:668 of the Implied Consent Law declared unconstitutional and to enjoin the defendant, the State of Louisiana, Department of Public Safety, Drivers License Division (hereinafter referred to as Agency) from suspending his driving privileges for refusing to submit to an alcohol analysis test after being arrested for driving while intoxicated (DWI). He has appealed a district court judgment that denied injunctive relief.
On April 29, 1973, plaintiff was arrested in Boutte, Louisiana, and charged with DWI (LSA-R.S. 14:98). Immediately after his arrest, he was advised of his constitutional rights by a reading of the "Miranda warning," which included this option: "You have the right to consult with and obtain the advice of an attorney before answering any questions." Plaintiff was then asked to submit to an alcohol analysis test which consisted of his blowing into a balloon. He was advised if he refused to take this test the Department of Public Safety could revoke his driving privileges for six months under R.S. 32:667. Plaintiff at this point requested permission to call his attorney, but was told by the police officers he must first submit to the test or indicate his refusal. Plaintiff refused to take the intoximeter test. Subsequently he pleaded guilty to the DWI charge. The record does not disclose when the guilty plea was entered but the date is not germane to the issues before us.
What is important is the procedure defendant followed in invoking the penalty of R.S. 32:667 because the main thrust of plaintiff's constitutional challenge is that he was not given a hearing before his license was suspended. He points out U.S. Const. Amend. XIV and LSA-Const. Art. 1, § 2 guarantee no person shall be deprived of property except by due process of law and this has been interpreted to require the citizen be given adequate notice of the proposed deprivation and be afforded an opportunity to oppose the action at a hearing before the right may be withdrawn. In the light of this contention, we compare the procedure followed by defendant with that authorized by R.S. 32:667, R.S. 32:668 and R.S. 32:414 to determine whether the statute itself does not meet these minimal standards of procedural due process or whether its administration in this case worked a deprivation of the constitutional guarantee.
On April 29, 1973, Sgt. Ernest Youngs, the arresting officer, executed an affidavit, valid in form, attesting that (1) he had reasonable ground to believe plaintiff was driving on a public highway while intoxicated and therefore arrested him that day; (2) he requested plaintiff to submit to an alcohol analysis testing; (3) he advised plaintiff his refusal would result in a six-month suspension of driving privileges; (4) plaintiff refused to submit to the test; (5) plaintiff was advised that an additional test may be given by another qualified person of his own choosing; and (6) plaintiff was informed of his specific constitutional rights. The affidavit was forwarded to the Agency's Baton Rouge office.
In May, defendant sent from Baton Rouge a notice to plaintiff by certified mail, return receipt requested, advising that a suspension of his driver's license and a surrender of his vehicle plates and registration certificate would become effective within 30 days. In this notice it was stated plaintiff could apply for a hearing within the 30-day period. This letter was returned to the Agency in Baton Rouge with the postal notation it was not deliverable because the addressee was not home on May 12 and that the letter thereafter remained unclaimed. On June 12, 1973, a computer that records the status of driver's licenses issued throughout the State was programmed to indicate plaintiff's license had a "suspended" status. However, the license was not picked up by *315 the state police. From Baton Rouge the Agency's processing of plaintiff's impending revocation shifted to New Orleans where State Trooper E. W. Fava of Troop B, who handles revocations in this area, mailed this notice to plaintiff:
 *316 Plaintiff took this notice to his attorney, who contacted Officer Fava. On the suggestion of the state police trooper, plaintiff through counsel applied for a hearing on the impending suspension. By letter dated July 12, 1973, H. N. Rowzie, Administrator of the Agency, informed plaintiff he would be given a hearing on August 20, 1973, but cautioned he should consider his license "suspended" pending the outcome of the hearing because his application therefor was not filed timely.
The scope of the hearing before the administrative officer was read to plaintiff at the outset of the proceedings. We quote:
"This hearing is being held pursuant to the provisions of Louisiana * * * R.S. 32:668. You were notified on 7-11-73 that in accordance with your request this hearing was scheduled to afford you an opportunity to present any facts, evidence and/or witnesses (including the arresting officer) in your behalf to show cause as to why this Department should not impose the suspension of your driving and/or registering privileges for refusing to submit to a chemical analysis test for the determination of the alcoholic content of your blood."
Plaintiff had not availed himself of the privilege to subpoena witnesses and he was the only one to testify. On August 27, 1973, the suspension of his driver's license was affirmed by the license control officer.
Plaintiff filed this suit for judicial review and injunctive relief on September 6, 1974, and has appealed the adverse decision of the trial court. At this point we note plaintiff at no time surrendered his driver's license or registration plates. Further, in the order of appeal granted by the trial court the defendant is prohibited from suspending the license while the appeal is pending.
We now quote the pertinent parts of the statutes regulating procedure in these cases because we find defendant failed to comply with the spirit of the law in the area of giving adequate notice:
R.S. 32:667:
"If a person under arrest refuses upon the request of a law enforcement officer to submit to a chemical test designated by the law enforcement agency as provided in R.S. 32:661, none shall be given. In all such cases the law enforcement officer shall submit a sworn report in a form approved by the director of public safety to the department of public safety that he had reasonable grounds to believe the arrested person had been driving or was in actual physical control of a motor vehicle upon the public highways of this state while under the influence of alcoholic beverages, that he had informed the arrested person as provided in R.S. 32:661(C) and that the person had refused to submit to the test upon the request of the law enforcement officer. Upon receipt of the sworn report the department of public safety shall suspend the license of said person or his permit to drive, or any nonresident operating privilege for a period of six months from the date said license is delivered to the department of public safety. * * *"
R.S. 32:668:
"A. Upon suspending the license or permit to drive or nonresident operating privilege of any person, or upon determining that the issuance of a license or permit shall be denied to the person, the state department of public safety shall immediately notify the person in writing and upon his request shall afford him an opportunity for a hearing in the same manner and under the same conditions as is provided in R.S. 32:414 for notification and hearings in the case of suspension of licenses, except that the scope of such a hearing for the purposes of this part shall cover the issues of whether a law enforcement officer had reasonable grounds to believe the person had been driving or was in actual physical control of a motor vehicle upon the public highways of this state while under the influence of alcoholic beverages, whether the *317 person was placed under arrest, whether he was warned by the officer as provided in R.S. 32:661(C) and whether he refused to submit to the test upon the request of the officer. After the hearing the department of public safety shall order that the suspension or determination that there should be a denial of issuance either be rescinded or sustained. Provided, however, if there is a finding that the person was not informed of the results of refusing to take the test, then his license or permit to drive or nonresident operating privilege shall not be suspended.
"B. If the suspension or determination that there shall be a denial of issuance is sustained after such a hearing, the person whose license or permit to drive or nonresident operating privilege has been suspended or to whom a license or permit is denied shall have the right to file a petition in the appropriate court for a review of the final order of suspension or denial by the State Department of Public Safety in the same manner and under the same conditions as is provided in R.S. 32:414 in the cases of suspension, revocation and cancellation of licenses."
and
R.S. 32:414:
"E. * * * Any person whose license has been suspended, cancelled or revoked by the department shall be notified of such suspension, cancellation or revocation in writing by the department, which notice shall be sent by certified mail to the last address furnished by such person; whereupon the said person shall within five days return his or her license to the department. The failure on the part of any person to comply with this provision shall be punishable as herein provided. Any person denied license or whose license has been suspended, cancelled or revoked shall have the right to file an application within thirty days thereafter for a hearing before the district court of the parish in which the applicant resides, and such court is vested with jurisdiction to set the matter for hearing in open court upon ten days written notice to the department, and thereupon to determine whether the person is entitled to a license or is subject to suspension, cancellation or revocation of license under the provisions of this Chapter, and appeal from the district court may be taken to any court of competent appellate jurisdiction."
The affidavit filed by Officer Youngs fully meets the requisites of R.S. 32:667. We reject plaintiff's contention it was not verified because the document contains the jurat of Karl Champagne who signed as "Notary Public or Other Authorized Officer."
In executing the next procedural step required by R.S. 32:668(A), the Agency failed to follow the mandate of the statute because when it became apparent the first notice was not delivered, we think it was incumbent on defendant to deliver actual notice before the 30-day period began to run. But without meeting this requisite, the Agency listed the status of plaintiff's license as suspended after June 12. The first actual notice plaintiff received was the letter of Trooper Fava which does state the suspension was in effect when the letter was dispatched. However, plaintiff through counsel did seek and obtain administrative and judicial review, and he has not yet been required to surrender his license.
It is true the computer listed the status of his license as suspended as of June 12, 1973, and plaintiff was notified on July 20 to consider his driving privileges suspended pending the outcome of the administrative hearing. Clearly this order is invalid because plaintiff was not notified or given the opportunity to be heard prior to the administrator's action. But there is no evidence this invalid order ever deprived plaintiff of a property right. Nor has plaintiff shown the administrative deficiencies in implementing the statutory notice requirement affected him adversely because *318 he has had the benefit of administrative and judicial review. We agree the mailing of a certified letter that was not delivered failed to meet the requirement of R.S. 32:668(A) of giving immediate notice of suspension. But to successfully urge a denial of procedural due process, the complainant must establish an actual deprivation of a right. She Smith v. Department of Public Safety, 254 So.2d 515 (La.App. 4th Cir. 1971).
We next consider plaintiff's contention the statutes are unconstitutional per se because the hearing is available after the suspension is an accomplished fact. While the language of R.S. 32:667 and 32:668 states the licensee may seek a hearing after he is notified of the suspension, a fair reading of the acts clearly indicates administrative and judicial review are available before the suspension or revocation becomes effective. R.S. 32:667 provides the six-month period begins when the license is delivered to the Department of Public Safety.
Plaintiff relies on Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), which holds a prior meaningful hearing must be granted before the property right may be taken. We agree and point out the Supreme Court held that a hearing had to be afforded before the termination of driving privileges became effective. The acts under consideration fully meet the Bell standards of procedural due process.
In holding R.S. 32:667 and R.S. 32:668 constitutional, we point out this result is in harmony with our decision in Smith v. Department of Public Safety, supra, in which the constitutionality of R.S. 32:414 was challenged as not affording adequate procedural due process.
Plaintiff next contends the statutes are overbroad and therefore unconstitutional because R.S. 32:667 exacts a penalty in an area where the State has expressed no interest. The suspension of a driver's license for refusing to submit to the alcohol analysis is required to be imposed in addition to any penalty that might stem from a criminal conviction arising out of the same incident. Plaintiff claims the State's sole interest in administering the test is to gather evidence for a criminal prosecution. We disagree. In Whitaker v. State, Dept. of Pub. Safety, Driv. Lic. Div., 264 So.2d 725 (La.App. 1st Cir. 1972), the court answered this contention in this way:
"* * * Several courts have recognized that the mandatory suspension of the driver's license and related motoring privileges is a separate administrative corollary to the licensing statute and is unrelated to the potential criminal conduct arising out of the same factual situation. See, for example, Bowers v. Hults, 42 Misc.2d 845, 249 N.Y.S.2d 361 (N.Y.S.Ct. Special Term, Oneida County, 1964):
`The same motor vehicle accident may give rise to two separate and distinct proceedings. One, a civil and administrative licensing proceeding instituted by the Motor Vehicle Commissioner to determine whether a person's privilege to drive shall be revoked; the other, a criminal action; instituted by the People in the appropriate Court to determine whether a crime has been committed. Each proceed independently of the other, the outcome of one action is of no consequence in the other. * * *
`The legislative scheme is clear. The right to drive being a privilege granted by the State, it has for the protection of the public, imposed conditions on that privilege; one being that a person consent to a chemical test under the specified conditions of the Statute (Vehicle and Traffic Law, § 1194). Once the conditions of the Statute are met, refusal to take the test results in a mandatory loss of license. * * *' (Id. 249 N.Y.S.2d at 364, 365)" 264 So.2d at 727.
We fully subscribe to these views, and find no merit in the overbreadth argument.
*319 Finally, plaintiff complains he was deprived of his constitutional right to remain silent and to consult an attorney before submitting to the test. This same argument was rejected in Whitaker v. State, Dept. of Pub. Safety, Driv. Lic. Div., supra, citing Finocchairo v. Kelly, 11 N.Y.2d 58, 226 N.Y.S.2d 403, 181 N.E.2d 427 (Court of Appeals of New York, 1962). R.S. 32:667 and R.S. 32:668 are intended to promote public safety on Louisiana highways by imposing withdrawal of licensing privileges from motorists arrested for driving while intoxicated under certain circumstances. As we view it the withdrawal of licensing privileges for a given period is a civil sanction to which the Miranda requirements are inapposite. We need not consider what effect the requirement that the motorist either submit or refuse the test prior to consulting counsel would have in a criminal proceeding; therefore, we limit our holding to the facts before us.
For the reasons assigned, the judgment appealed from is affirmed. Costs are to be borne by the appellant.
Affirmed.