332 So.2d 427 (1976)
STATE of Louisiana
v.
Lewis E. PAGE, Jr.
No. 57256.
Supreme Court of Louisiana.
May 17, 1976.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Walter L. Sentenn, Jr., Asst. Dist. Atty., for plaintiff-relator.
Peter J. Castano, New Orleans, for defendant-respondent.
*428 CALOGERO, Justice.
This case concerns the appropriate jurisdiction for a district attorney's filing of a petition to have a person declared a habitual offender under the Motor Vehicle Habitual Offender Law, R.S. 32:1471 et seq. That law, passed by the Legislature in 1972, provides for an order by a court, after determination that a driver is a habitual offender, directing him not to operate a motor vehicle on Louisiana highways, and requiring him to surrender his license to operate a motor vehicle for a minimum period of five years. The act describes an habitual offender as one who has accumulated prescribed numbers[1] of particular, separate and distinct driving offenses committed during a five year period. Should the court adjudge him a habitual offender, he may appeal the judgment as he would other civil actions.[2] But so long as a court judgment prohibiting operation remains in effect, he may not drive a motor vehicle on the public highways and, if he does, he may upon conviction of same, be imprisoned for not less than one nor more than five years. R.S. 32:1480(A).
Acting under the authority of this Act, the district attorney of Orleans Parish filed a petition charging Lewis E. Page, Jr., because he had been found guilty of driving while intoxicated on three occasions (once in September of 1972 and again in July and December of 1974) and had forfeited bond on a charge of driving with license suspended (in 1974),[3] with being a habitual offender under the Motor Vehicle Habitual Offender Law. Because the Act directs the district attorney to file the petition "in the criminal district court for the parish wherein such person resides" R.S. 32:1474, the district attorney of Orleans Parish filed the petition in the Criminal District Court for Orleans Parish, the parish of defendant's residence. Defendant thereupon filed a motion to quash the petition on the ground that the Criminal District Court for Orleans Parish (referred to hereinafter as the Criminal District Court) had no jurisdiction over the proceeding, which, he asserted, was a civil matter. The trial judge granted the motion to quash and we thereupon granted writs upon the state's application.[4] 332 So.2d 432 (La.1976).
If this lawsuit is indeed a criminal matter, then the Criminal District Court certainly has jurisdiction. In that instance, not only is the matter generally within the province of the Criminal District Court, but also the Act has specified the Criminal District Court as the forum in which to bring the action. If the lawsuit is a civil matter, however, the Act may or may not (depending, possibly, upon the margin of the vote of the Legislature, as will be discussed hereinafter) be constitutionally sufficient to place jurisdiction in the Criminal District Court. Thus the first question we must resolve *429 is whether a license revocation proceeding under the Motor Vehicle Habitual Offender Act is a criminal or civil matter.
Factors which militate in favor of the conclusion that the proceeding is civil are these:
1) The Act directs that the petition be filed, not in the parish where the offenses were committed, as would be the case in a criminal action (La.Const. art. I, § 16 (1974); C.Cr.P. art. 611) or a criminal enhancement proceeding [R.S. 15:529.1(D)], but in the parish of the defendant's residence.
2) An appeal taken from any final action or judgment entered under the provisions of the Act is in the same manner and form as appeals in civil actions. R.S. 32:1478.
3) The fundamental purpose of the Act is to promote highway safety by denying driving privileges to habitual traffic law offenders (32:1471), a distinctly non-criminal objective.
One purpose of the Act is, of course, to discourage repetition of criminal acts, but this alone is not sufficient to give the Act a penal character since deterrence of wrongful criminal conduct while often an object of criminal statutes may be an objective of a regulatory statute as well. See McDermott v. Wisconsin, 228 U.S. 115, 33 S.Ct. 431, 57 L.Ed. 754 (1913); United States v. Kordel, 164 F.2d 913 (7th Cir. 1947), aff'd, 335 U.S. 345, 69 S.Ct. 106, 93 L.Ed. 52 (1948).
There are, of course, features of the Act not now before us which are penal, or criminal. For instance, 32:1480 may result in imprisonment for driving while classified as a habitual offender. However, this is an independent feature of the Act separate and distinct from the revocation proceeding.
The two appellate courts in this state which have reviewed the statute have determined that the revocation proceeding is indeed a civil action. State v. Free, 321 So.2d 50 (La.App.3rd Cir. 1975) writs refused, 325 So.2d 272; State v. Love, 312 So.2d 675 (La.App.2nd Cir. 1975), writs refused, 317 So.2d 627. In State v. Love, supra. at 677, the Second Circuit held that the revocation proceeding was a civil matter for these reasons:
"The Motor Vehicle Habitual Offender Law authorizes both civil and criminal proceedings against a person related to his operation of a motor vehicle. The initial suit to have a person declared an habitual offender and to revoke his license is a civil matter. It does not involve loss of liberty or threat of incarceration, but its object is the protection of the public in removing from the highways a dangerous driver. R.S. 32:1474-78. On the other hand, two additional proceedings authorized by R.S. 32:1480 and 1481, which may result in enhancement of statutory penalties and imprisonment for driving while classified as an habitual offender, are clearly criminal actions. A previous civil declaration of habitual offender status is essential to the success of any subsequent criminal proceeding, but such prosecutions are necessarily separate and distinct from the civil revocation proceeding."
The Supreme Courts of two other states which have passed habitual traffic offender laws similar to ours have held that the revocation proceedings under their acts are civil actions. State v. Bowles, 113 N.H. 571, 311 A.2d 300 (1973); State v. Perreault, 113 N.H. 588, 311 A.2d 303 (1973); Huffman v. Commonwealth, 210 Va. 530, 172 S.E.2d 788 (1970). See Ferguson v. Gathright, 485 F.2d 504 (4th Cir. 1973) cert. denied 415 U.S. 933, 94 S.Ct. 1447, 39 L.Ed.2d 491, 26 Wash. & Lee L.Rev. 271 (1969).
Furthermore, proceedings to revoke a local license to drive a motor vehicle are generally regarded as civil proceedings. *430 See Commonwealth, Department of Transportation, etc. v. James, 6 Pa. Cmwlth. 493, 296 A.2d 530 (1972); State, Department of Highways v. Normandin, 284 Minn. 24, 169 N.W.2d 222 (1969); Ziemba v. Johns, 183 Neb. 644, 163 N.W.2d 780 (1968); Bolio v. Malloy, 126 Vt. 424, 234 A.2d 336 (1967); Haswell v. Powell, 38 Ill.2d 161, 230 N.E.2d 178 (1967) app. dismissed 390 U.S. 712, 88 S.Ct. 1408, 20 L.Ed.2d 250; Gottschalk v. Sueppel, 258 Iowa 1173, 140 N.W.2d 866 (1966); Honeycutt v. Scheidt, 254 N.C. 607, 119 S.E.2d 777 (1961).
License revocation procedures, even those following conviction for a specific traffic violation, have been considered civil actions by Louisiana courts. Under La.R.S. 32:667, 668 which provides for suspension of license after refusal to take a blood alcohol test, the revocation procedure is unquestionably civil. Culp v. Department of Public Safety, 288 So.2d 680 (La.App.4th Cir. 1974); Gardner v. State, Department of Public Safety, 198 So.2d 184 (La.App.3rd Cir. 1967). Moreover, the revocation of license under R.S. 32:414 also constitutes a civil sanction, in certain circumstances, against motorists who are convicted of driving while intoxicated. Harrison v. State, Department of Public Safety, 298 So.2d 312 (La.App.4th Cir. 1974).
Although due process is required before a driver's license may be revoked, Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); Smith v. Department of Public Safety, 254 So.2d 515 (La.App.4th Cir. 1971),[5] it does not necessarily follow that the revocation of a license constitutes criminal punishment. On the contrary, the revocation of one's license to operate a motor vehicle under the habitual offender law does not constitute punishment. Rather, it is a civil measure considered necessary by the Legislature to adequately provide for public safety. It is a finding by a court that the person in question is no longer fit to enjoy the privilege of driving a motor vehicle. The result of the finding is to deny the person the right to drive on the public highways of the state; he suffers no loss of liberty, no incarceration nor fine.
We hold therefore that the district attorney's petition to have defendant declared an habitual offender under the Motor Vehicle Habitual Offender Law, with the attendant minimum five year revocation of driving privileges, is a civil proceeding. We now turn to the problem of whether the Criminal District Court for the Parish of Orleans was properly vested with jurisdiction of this civil matter.
The Act in question was passed by the Legislature in 1972 while the Louisiana Constitution of 1921 was in effect. Under the 1921 Louisiana Constitution the Civil District Court for the Parish of Orleans was vested with "the same exclusive original civil jurisdiction as that of District Courts throughout the State . . . ." La.Const. art. VII, § 81 (1921). The original civil jurisdiction of the district courts alluded to in Section 81 was original jurisdiction "in all civil matters." La.Const. art. VII, § 35 (1921). Under that same 1921 Louisiana Constitution the Criminal District Court was vested with "exclusive jurisdiction of the trial and punishment of all crimes, misdemeanors and offenses committed within the parish of Orleans, the jurisdiction of which is not vested by this Constitution in some other court." La.Const. art. VII, § 83 (1921). There was, however, another provision of the 1921 Constitution which authorized the Legislature "by two-thirds vote of all members elected to each house" to change, alter or repeal any or all of the constitutional *431 provisions covering the Criminal District Court for the Parish of Orleans.[6]
For purposes of this opinion (and since it does not alter the result herein), we will assume that the Legislature, by a two-thirds vote of all members elected to each House, could by virtue of Article VII, Section 87, have vested civil jurisdiction in the Criminal District Court.[7] We were prompted to grant this writ by the foregoing assumption and by our belief that the 1972 Act here at issue was passed by the requisite two-thirds vote of each House in the Legislature. The state in brief contends that the Act therefore successfully enlarged the jurisdiction of the Criminal District Court to include jurisdiction over civil license revocation proceedings. Upon our present review we discover that the Act passed the Senate 35-0 and the House 65-3. Inasmuch as the House was comprised of 105 members in 1972[8] it would have taken 70 votes in the House to constitute a two-thirds vote "of all members elected to each House."
Thus, even if jurisdiction over a civil matter might have been vested by the Legislature in the Criminal District Court [see Footnote 6 above], the Act did not pass by the requisite margin. The Act, therefore, could not constitutionally have vested the revocation proceeding in the Criminal District Court as the Legislature had attempted.
Inasmuch as the jurisdiction of the Criminal District Court was unchanged on the effective date of the 1974 Constitution, La.Const. art. V, § 32 (1974) and since the legislation here at issue was not re-enacted after January 1, 1975, (the effective date of the 1974 Constitution),[9] the Criminal District Court today does not have jurisdiction over the civil revocation proceeding authorized by R.S. 32:1471 et seq.
The judgment of the trial court in granting motion to quash was therefore correct.
Accordingly, for the above reasons the judgment of the district court is affirmed.
NOTES
[1] R.S. 1472(A)(1) provides that the offenses be three or more described offenses of a given serious nature, falling within seven categories, and 32:1472(A)(2) provides alternatively for:

"Ten or more convictions of separate and distinct offenses involving moving violations singularly or in combinations, in the operation of a motor vehicle which are required to be reported to the Department of Public Safety and the commission whereof authorizes the department or authorizes a court to suspend or revoke the privilege to operate motor vehicles on the highways of this state for a period of thirty days or more for each offense and such convictions shall include those offenses enumerated in Paragraph (1) when taken with and added to those offenses described."
[2] R.S. 32:1478 provides:

"An appeal may be taken from any final action or judgment entered under the provisions of this chapter in the same manner and form as appeals in civil actions."
[3] For purposes of this Act, a non-vacated forfeiture of bail or collateral deposited to secure a defendant's appearance in court is equivalent to a conviction. R.S. 32:1472(C).
[4] We also granted writs in the similar case of State v. Williams, our docket decided this day. The two cases were consolidated for our review.
[5] But see 36 La.L.Rev. 852 (1976).
[6] Article VII, § 87 of 1921 Constitution provided that:

"The Legislature may, after January 1st, 1924, by a two-thirds vote of all members elected to each house, change, alter or repeal any or all of the above provisions covering the criminal courts of the City of New Orleans and parish of Orleans."
For two cases which discuss and apply this provision, see State v. Brady, 310 So.2d 593 (La.1975); Sciambra v. Edwards, 270 So.2d 167 (La.App.1st Cir. 1972), writs refused, 273 So.2d 41.
[7] It is not at all certain that this is so. Constitutional authority for the Legislature to alter, amend or repeal constitutional provisions "covering the criminal courts of the City of New Orleans and the parish of Orleans" does not necessarily, by inference or otherwise, authorize the Legislature in the exercise of this authority to tamper with the exclusive original jurisdiction of the Civil District Court vested by the independent constitutional directive of Art. VII, § 81.
[8] La.Const. art. III, § 5 (1921) provides that the House of Representatives "shall be composed of one hundred five (105) members, unless increased as herein provided." The 1972 Official Journal of the Proceedings of the House of Representatives of the State of Louisiana, pp. 3-4, confirms that there were 105 members of the House in 1972.
[9] Under the 1974 Constitution, jurisdiction relative to the Criminal District Court and the Civil District Court for the Parish of Orleans apparently may be changed by a majority vote in the Legislature. See La. Const. art. V, § 32 (1974) which states that "the following courts and officers in Orleans Parish are continued subject to change by law; the civil and criminal district court;. . .."