609 So.2d 790 (1992)
Patrick J. BUTLER
v.
DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS.
No. 92-CA-1918.
Supreme Court of Louisiana.
November 30, 1992.
*791 Christopher J. Boudreaux, Lafayette, for applicant.
Paul E. Schexnayder, Baton Rouge, Boudreaux & LaRose, Thibodaux, Richard P. Ieyoub, Atty. Gen., Walter K. Naquin, Jr., Dist. Atty., for respondent.
DENNIS, Justice.
In this case, we consider the constitutionality of that part of Louisiana's Implied Consent Law, La.R.S. 32:667 and 668 which authorizes a driver's license suspension after a motorist is arrested for driving while intoxicated and the motorist's blood alcohol level is found to exceed .10g%. The Department of Public Safety and Corrections has appealed a judgment in favor of the plaintiff, Patrick J. Butler, which reversed the Department's administrative order of suspension of his driver's license after a DWI arrest on the grounds that the administrative procedure violates the state and federal constitutional guarantees of due process and equal protection. We hold that the district court erred on both accounts, and accordingly reverse and reinstate the decision of the administrative law judge.

FACTS
On September 14, 1990, Patrick J. Butler was arrested in Thibodaux, Louisiana for driving while intoxicated in violation of La. R.S. 14:98. After being stopped for speeding, Butler was ordered to perform and successfully completed certain field sobriety tests. Thereafter, a breath analysis test was administered and a blood alcohol concentration of .14g% was registered.
*792 Pursuant to La.R.S. 32:667 the Department of Public Safety suspended his driver's license for 90 days, which suspension was affirmed at an administrative hearing. Butler thereafter appealed the suspension of his license to the Seventeenth Judicial District Court. In written reasons for judgment, the district court judge ruled that the suspension of Butler's driver's license constituted a violation of the due process and double jeopardy clauses of the state and federal constitutions and accordingly reversed the driver's license suspension. Later, criminal proceedings were instituted. On January 15, 1991, Butler was convicted of Driving While Intoxicated in connection with this incident, sentenced to 90 days in jail, which term was suspended upon compliance with various conditions. The license suspension matter was then directly appealed to this court.

THE STATUTE
Louisiana's Implied Consent Law, La. R.S. 32:667 and 668, operates in conjunction with the statute which makes operating a vehicle while intoxicated a criminal offense, La.R.S. 14:98.[1] The statutes were enacted in 1972 as part of a comprehensive legislative package to combat dangers posed by drunk driving. The implied consent statute attempts to assuage this problem by deeming all licensed drivers on state highways to have impliedly consented to any number of tests to determine intoxication. Suspension or revocation of a driver's license under the implied consent statute is a further attempt to remove the hazards posed by drunk drivers.
In addition to the criminal penalties of section 14:98, the law provides that when a person is arrested for a drunk driving offense and either refuses to submit or voluntarily submits to a blood alcohol test and the result shows a blood alcohol level of.10g% or above, the arrestee's driver's license shall be seized and a temporary receipt of license issued in its place. La.R.S. 32:667A(1) (1989). The temporary receipt serves as notice to the arrestee that he has not more than ten days from the date of arrest to make a written request to the Department of Public Safety and Corrections for an administrative hearing in accordance with La.R.S. 32:668. La.R.S. 32:667A(2) (1989). If no timely request is filed, the person's driver's license may be suspended for ninety days on a first offense without eligibility for a hardship license for the first thirty days, and for three hundred sixty-five days without eligibility for a hardship license on second and subsequent violations occurring within five years of the first offense. La.R.S. 32:667B(1) (1989). However, if a timely request is filed, the arrestee is entitled to have the reasonableness of the suspension determined after a hearing before an administrative law judge of the Department of Public Safety and Corrections, which judgment is appealable thereafter to an appropriate court. La.R.S. 32:668 (1989). Thus, administrative and judicial review de novo are available before the license suspension or revocation becomes effective. See Flynn v. State of Louisiana, Department of Public Safety & Correction, 608 So.2d 994 (La.1992); Dement v. Dept. of Public Safety and Corrections, 590 So.2d 1333 (La.App.2d Cir.1991); Jaubert v. Department of Public Safety, 323 So.2d 212 (La.App. 4th Cir.1975); Harrison v. State Department of Public Safety, 298 So.2d 312 (La.App. 4th Cir.1974). La.R.S. 49:951 et seq. (1987 & Supp.1992).

DUE PROCESS
It is a well-established state and federal constitutional principle that a driver's license is a property interest that cannot be suspended or revoked without due process of law. Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); State v. Page, 332 So.2d 427 (La.1976). The constitutional adequacy of an adjudicatory process in which there is a deprivation of property is governed by the tripartite balancing test announced by the U.S. Supreme Court in Mathews v. Eldridge, 424 U.S. *793 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The reviewing court must analyze and weigh three factors: first, the private interest affected by official action; second, the risk of error in the procedures used and the effectiveness, if any, of additional or substitute procedures; and third, the governmental interest involved. 424 U.S. at 335, 96 S.Ct. at 903.
We find it significant that Butler does not challenge the constitutional adequacy of the driver's license suspension process as a whole. Rather, he alleges that the combination of functions or roles played by the State in the drivers' license suspension process has deprived him of due process of law. His challenge, therefore, is that the statutory process is unconstitutional as applied in his case. The district court, in effect, concluded that Butler was denied due process of law under a "strict separation of functions" rationale because, in its assessment, the State functioned as investigator, advocate, and decisionmaker in Butler's criminal trial and license suspension hearing, thereby depriving Butler of a neutral and detached decisionmaker. We conclude that the district court applied an incorrect interpretation of the "separation of functions" doctrine and accordingly reverse the decision of the district court insofar as it relates to the State's due process argument.
An impartial decisionmaker is essential to an administrative adjudication that comports with due process, even if de novo review is available. Withrow v. Larkin, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975); Gibson v. Berryhill, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973); Ward v. Village of Monroeville, Ohio, 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Matter of Rollins Environ. Services, Inc., 481 So.2d 113 (La.1985); Wilson v. City of New Orleans, 479 So.2d 891 (La.1985). To this end, the state Administrative Procedure Act attempts to prevent partiality or bias in adjudicative settings by prohibiting ex parte consultations and requiring recusal of subordinate deciding officers or agency members from proceedings in which they cannot accord a fair and impartial hearing or consideration. La.R.S. 49:960 (1987). See also 5 U.S.C. §§ 556-57 (1977 & Supp. 1992). The federal Administrative Procedure Act similarly attempts to avoid potential bias or prejudice in adjudications by providing that no employee engaged in investigating or prosecuting may also participate or advise in the adjudicating function. 5 U.S.C. § 554(d) (1977).
The U.S. Supreme Court has stated, and this court concurs, that a party challenging the constitutionality of an administrative adjudication on the grounds of bias or prejudice of the decisionmaker must overcome the strong presumption of honesty and integrity in those serving as adjudicators. That party must present convincing evidence that the combination of functions in the same individuals poses such a risk of actual and substantial bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be preserved. Withrow v. Larkin, 421 U.S. 35, 47, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1972).
It is uncontested that the administrative law judge who presided over the license suspension hearing is employed by and subject to the supervision and control of the State through the Department of Public Safety and Corrections, the agency which instituted proceedings to suspend Butler's driving privileges. Butler contends that the imposition of a suspension of his driving privileges under circumstances where the decisionmaker is subject to the control of the investigating and/or prosecutorial body deprives him of a neutral decision-making process required by the due process clause of the state and federal constitutions. In essence, Butler has levied a "strict separation of functions" attack on the constitutional adequacy of the pre-suspension hearing before the administrative law judge. Our appreciation of federal jurisprudence convinces us that the U.S. Supreme Court has rejected the contention that strict separation of functions must be observed for an adjudication to comport with due process guarantees.
*794 Under federal constitutional law, agency members can perform multiple roles within the same adjudication without violating due process. The mere concentration of functions within the same body does not render adjudicative proceedings per se unconstitutional. Jacob Stein, Glenn Mitchell, and Basil Mezines, Administrative Law § 3.02 (1990).
In Withrow v. Larkin, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975), a unanimous Court decided that the combination of investigatory, prosecutorial and decisionmaking powers in a single agency was not so unfair as to constitute a denial of due process. There, a Wisconsin statute empowered a state examining board to warn and reprimand physicians, to temporarily suspend licenses, and to institute criminal actions or actions to revoke a license. When the board instituted an investigation and later held a hearing to determine whether Dr. Larkin's medical practice was in violation of medical ethics (Larkin had been operating an abortion clinic), Larkin contended that the statute was an unconstitutional violation of due process of law because the board could suspend the physician's license at the board's hearing on charges evolving from the board's investigation. Larkin claimed that the statutory grant of authority abridged constitutional due process because the board's investigatory and adjudicative functions creates an unconstitutional risk of bias in the administrative adjudication. In unanimously rejecting this challenge, the Court indicated that a due process claim fails unless the protesting party can demonstrate some particular bias which goes beyond the mere combination of functions in a single agency.
Federal cases in which due process violations have been found have not focused on the combination of functions of agency officials but are instead characterized by a prejudgment, or the appearance thereof, of adjudicative facts of ongoing or pending matters by adjudicative officials. In American Cyanamid Co. v. FTC, 363 F.2d 757 (6th Cir.1966), the court held that the participation of the chairman of the Federal Trade Commission in adjudicatory proceedings amounted to a denial of due process because the chairman had previously served actively as counsel for a Senate subcommittee investigating many of the same facts and issues and involving many of the same parties before the Commission for consideration. Similarly, in Texaco, Inc. v. FTC, 336 F.2d 754 (D.C.Cir.1964), vacated on other grounds, 381 U.S. 739, 85 S.Ct. 1798, 14 L.Ed.2d 714 (1965), the court found that a speech made by a commissioner clearly indicated that he had to some extent already reached a decision regarding matters pending before the Commission and, therefore, his participation in the adjudication would violate the due process clause. See also Cinderella Career & Finishing Schools, Inc. v. FTC, 425 F.2d 583 (D.C.Cir.1970); Amos Treat & Co. v. SEC, 306 F.2d 260 (D.C.Cir.1962); Trans World Airlines v. CAB, 254 F.2d 90 (D.C.Cir.1958).
This court as well has ruled that the mere combination of functions of a presiding agency official does not amount to a denial of due process. In Matter of Rollins Environ. Services, Inc., 481 So.2d 113 (La.1985), the secretary of environmental quality was not required to recuse herself from a dispute with an operator over hazardous waste disposal at Rollins even though she had participated in the investigation into Rollins' alleged violation. Recusal, however, was warranted on other grounds. This court found that the secretary's mere exposure to the evidence did not necessitate her recusal, but concluded that her repeated statements that she intended to use every legal means at her disposal to close the facility indicated a prejudgment of the adjudicative facts in dispute and warranted recusal. In the course of reaching this decision, this court identified five possible kinds of "bias" calling the decisionmaker's impartiality into question:
(1) A prejudgment or point of view about a question of law or policy ... (2) a prejudgment about legislative facts that help answer a question of law or policy... (3) Advance knowledge of adjudicative facts that are in issue ... (4) A personal bias or personal prejudice, that *795 is, an attitude toward a person, as distinguished from an attitude about an issue... (5) One who stands to gain or lose by a decision either way ... [or] a conflict of interest. 481 So.2d at 119-120 (citing K. Davis, Administrative Law Treatise, 371-72 (1978)).
Thus, jurisprudence illustrates that a line has been drawn between an advance commitment about the facts or a personal stake in the outcome of an adjudication and the mere combination of functions within a single administrative body. Davis at 383. We conclude that the mere combination of functions will not rise to the level of a due process violation.
Moreover, our review of this record reveals that Butler's heavy reliance on Ward v. Village of Monroeville, Ohio, 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972) is misplaced. The record contains no evidence that the administrative law judge, or for that matter, the Department of Public Safety and Corrections, has a demonstrable pecuniary interest in the outcome of DWI related license suspension cases such as to overcome the presumption of impartiality. In contrast, the mayor in Ward, supra, relied on revenues derived from the mayor's court both for his personal gain and community revenues and was thus found to have a direct, personal and substantial pecuniary interest in the outcome of the cases before the court. Compare Wilson v. City of New Orleans, 479 So.2d 891 (La.1985) (This court found that a private company which decided which automobiles would be targeted for immobilization, a.k.a "boot and tow", for unpaid parking tickets and directed particular employees to immobilize automobiles was not a neutral and detached decisionmaker sufficient to comport with due process requirements because the company received significant financial benefits from the immobilization program).
Butler has failed to submit any evidence which demonstrates that the administrative law judge was biased or prejudiced under the above tests. The fact that the hearing officer is employed by the Department of Public Safety & Corrections, without more, does not convince this court that due process has been abridged. Because the administrative hearing process did not deprive Butler of due process of law, the decision of the lower court on this ground is reversed.

DOUBLE JEOPARDY
The state and federal constitutional proscriptions against double jeopardy protect against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense. See North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); La. Const. Art. I, § 15; U.S. Const. amend. 5. The third of these protections is at issue here. Butler contends that his driver's license suspension is a second punishment for a single offense. We disagree.
Federal jurisprudence and opinions of this court have indicated that a government may impose both a criminal and a civil sanction with respect to the same act or omission without violating Double Jeopardy guarantees. However, the civil sanction must not be "so divorced from any remedial goal that it constitutes `punishment' for the purpose of double jeopardy analysis." U.S. v. Halper, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989) (citing Helvering v. Mitchell, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917 (1938)). Our inquiry, therefore, is twofold. The first question is whether the license suspension provision of the Implied Consent Law is remedial or punitive in nature. Because we find the license suspension procedure to be a civil measure, the next question is whether a license suspension nevertheless operates as a punishment and thus falls squarely within the proscription against multiple punishments for the same offense.
The answer to the first question is clear; a driver's license suspension is a civil, not punitive, measure. This court in State v. Page, 332 So.2d 427 (La.1976) held that the suspension or revocation of a driver's license does not constitute punishment but rather is "a civil measure considered necessary by the legislature to adequately provide *796 for public safety." 332 So.2d at 430. Cf. Culp v. Department of Public Safety, 288 So.2d 680 (La.App. 4th Cir.1974). The Page court found that the motorist suffers no loss of liberty, no incarceration or fine as a result of the suspension or revocation of his license but merely forfeits the privilege of driving on public highways of the state. Although Page arose as a Motor Vehicle Habitual Offender suit, we find the rationale equally applicable to the present case.
The Implied Consent Law, like the Motor Vehicle Habitual Offender Law, was enacted to promote public safety on Louisiana highways by withdrawing the driving privileges of motorists arrested for driving while intoxicated. Price v. Department of Public Safety, 580 So.2d 503 (La.App. 4th Cir.1991); Harrison v. State Dept. of Public Safety, Drivers License Division, 298 So.2d 312 (La.App. 4th Cir.), writ denied 300 So.2d 840 (La.1974); Whitaker v. State, Dept. of Pub. Safety, Driv. Lic. Div., 264 So.2d 725 (La.App. 1st Cir.1972). Moreover, our appellate courts which have reviewed the statute have determined that the license revocation or suspension proceeding is a civil matter because it does not involve a loss of liberty or threat of incarceration. See, e.g., Graves v. The Dept. of Public Safety and Corrections of the State of Louisiana, 590 So.2d 1290 (La. App. 1st Cir.1990) (by implication); Culp v. Department of Public Safety, et al., 288 So.2d 680 (La.App. 4th Cir.1974). We thus conclude that a driver's license suspension is a remedial measure which attempts to protect society from the hazards posed by drunk drivers by removing the driving privileges of those who have been convicted of driving while intoxicated. Cf. Allen v. Louisiana State Board of Dentistry, 603 So.2d 238 (La.App. 4th Cir.1992) (double jeopardy does not attach to administrative proceedings which could result in the suspension of a dentist's license); In re Soileau, 502 So.2d 1083 (La.1987) (double jeopardy not apply to disciplinary proceedings against a judge); Pullin v. Louisiana State Racing Commission, 484 So.2d 105 (La.1986) (racing license revocation proceeding was characterized as civil); Louisiana State Board of Medical Examiners v. Booth, 76 So.2d 15 (La.App. 1st Cir.1954) (injunction proceedings brought pursuant to violations of Louisiana law prohibiting medical practice without a license were civil in nature and not subject to pleas of double jeopardy); U.S. v. Bizzell, 921 F.2d 263 (10th Cir.1990) (disbarment was strictly remedial); Greene v. Sullivan, 731 F.Supp. 838 (E.D.Tenn.1990) (pharmacist's 5 year suspension from participation in Medicare program was remedial and did not violate Double Jeopardy).
The final inquiry is whether the civil, remedial measure of a post-DWI arrest license suspension is nevertheless of sufficient deterrent force and impact so as to violate the constitutional proscription against multiple punishments for the same offense. We conclude that it is not and, accordingly, reverse the district court's judgment on this ground.
The U.S. Supreme Court recently considered whether and under what circumstances a civil penalty constitutes punishment for the purpose of the Double Jeopardy Clause of the U.S. Constitution. In United States v. Halper, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989) the manager of a medical laboratory company which provided medical service to patients eligible for federal Medicare benefits was convicted of submitting 65 false claims for reimbursement under the federal criminal false claims statute. Halper was sentenced to prison for two years and fined $5,000. Based solely on facts established in the criminal proceeding, the federal government sued Halper under the federal civil False Claims Act. The government sought a $130,000 civil penalty (the statute authorized a $2000 penalty for each offense), twice the government's actual damages (which were only $585), and costs of the civil action. The district court refused to apply the statutory civil penalty on double jeopardy grounds and limited the government's recovery to double the actual damages plus its costs. The Supreme Court held that this a "rare case" in which the imposition of the full statutory penalty *797 would violate the Double Jeopardy Clause of the Fifth Amendment. The Court reasoned that the disparity between the government's actual costs in investigating and prosecuting Halper's false Medicare claims and the actual damage he caused the Medicare program would render the full civil penalty a second punishment. In reaching this conclusion, the Court stated that "a civil as well a criminal sanction constitutes punishment when the sanction as applied to the individual case serves the goal of punishment," id. 490 U.S. at 448, 109 S.Ct. at 1901, and further that "under the Double Jeopardy Clause a defendant who already has been punished in the criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction has not been fairly characterized as remedial, but only as a deterrent or retribution." Id. at 448, 109 S.Ct. at 1902.
This is not one of the "rare cases" alluded to in Halper in which a civil penalty, imposed after criminal sanctions, implicates the double jeopardy clause of the federal or state constitution. Unlike Halper's disproportionate fine, Butler's license suspension is temporary (90 days), the last 60 days of which he will be able to obtain a restricted license. Furthermore, Butler's license suspension, in contrast to Halper's fine, bears a rational relationship to the legitimate governmental purpose of promoting public safety on Louisiana highways. Price, supra; Harrison, supra.
While this court recognizes that the Implied Consent Law, like the Motor Vehicle Habitual Offender Law, is to some extent deterrent and thus of a punitive nature because the statute attempts to discourage the repetition of criminal acts, this court has previously stated that the deterrence may be a valid objective of a regulatory statute. State v. Page, 332 So.2d at 429. The statute's primary effect is remedial; it removes those drivers from our state highways who have been proven to be reckless or hazardous. It effectuates their removal through a license suspension pursuant to La.R.S. 32:667 and 668. To the end that a temporary revocation of driving privileges meets the stated objective of highway safety, we conclude that the statutorily authorized license suspension to be not so divorced from its intended remedial goal that it amounts to a second punishment for the same offense in violation of double jeopardy.

CONCLUSION
For the foregoing reasons, the judgment appealed from is reversed and remanded with an order directing the district court to reinstate the driver's license suspension ordered by the administrative law judge.
REVERSED AND REMANDED.
NOTES
[1] The statute also operates in conjunction with La.R.S. 32:414, the general statutory authority for the suspension, revocation and cancellation of licenses by the Department of Public Safety.