679 So.2d 1011 (1996)
STATE of Louisiana, Plaintiff-Respondent,
v.
James A. SONNIER, Defendant-Relator.
No. K95-1103.
Court of Appeal of Louisiana, Third Circuit.
August 28, 1996.
Robert Richard Bryant Jr., Paul Peter Reggie, Robert C. McCorquodale, Lake Charles, for State of Louisiana.
Kenneth E. Badon, Michael R. Garber, Lake Charles, for James A. Sonnier.
Before THIBODEAUX, COOKS, and AMY, JJ.
THIBODEAUX, Judge.
The defendant-relator, James A. Sonnier, was arrested for driving while intoxicated. Because his blood alcohol level exceeded.10%, Sonnier's driver's license was administratively suspended under the provisions of La.R.S. 32:667 and 668, Louisiana's Implied Consent Law. He filed a motion to quash the bill of information on the ground that double jeopardy barred the prosecution for DWI because he had already been punished by the suspension of his driving privileges. The trial court denied Sonnier's motion to quash.[1] He then filed an application for a supervisory writ with this court.
We deny defendant's-relator's writ application and affirm the ruling of the trial court that double jeopardy does not prohibit Sonnier's prosecution for DWI. The clearest proof does not indicate that the suspension proceedings are so punitive in form and effect as to render them criminal.

ISSUE
The issue is straightforward: Does the double jeopardy clause of La. Const. Art. I, § 15 and U.S. Const. amend. 5 bar prosecution for driving while intoxicated after an individual's driving privileges have been administratively suspended for exceeding the legal limit of intoxication as a result of his arrest for driving while intoxicated?

LAW & DISCUSSION
Butler v. Dept. of Public Safety and Corr., 609 So.2d 790, 797 (La.1992) held that:
To the end that a temporary revocation of driving privileges meets the stated objective of highway safety, we conclude that the statutorily authorized license suspension to be not so divorced from its intended remedial goal that it amounts to a second punishment for the same offense in violation of double jeopardy.
These consolidated cases were called up for full review to examine whether United States v. Halper, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), Austin v. United States, *1012 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993) and Department of Revenue of Montana v. Kurth Ranch, 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994) altered or made ineffectual the conclusion reached in Butler. We conclude that they do not.
Recently, the United States Supreme Court decided United States v. Ursery, and United States v. $405,089.23, ___ U.S. ___, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996). These cases clarified the meaning of Halper, Austin, and Kurth Ranch and, in so doing, amplified the import of Butler.
A majority of this panel felt that Halper announced a general rule which focused on whether a sanction served a remedial or punitive purpose in determining the application of the Double Jeopardy Clause. That position has been repudiated in Ursery. Id. at p. ___, n. 2, 116 S.Ct. at p. 2145, n. 2. According to Ursery, Halper announced a much narrower rule:
Where a defendant previously has sustained a criminal penalty and the civil penalty sought in the subsequent proceeding bears no rational relation to the goal of compensating the Government for its loss, but rather appears to qualify as `punishment' in the plain meaning of the word, then the defendant is entitled to an accounting of the Government's damages and costs to determine if the penalty sought in fact constitutes a second punishment.
Ursery, ___ U.S. at ___, 116 S.Ct. at 2144, quoting United States v. Halper, 490 U.S. at 449-450, 109 S.Ct. at 1902 (emphasis in text). To apply the general rule, Ursery reasoned that "... virtually every sanction would be declared to be a punishment: it is hard to imagine a sanction that has no punitive aspect whatsoever...." Ursery, ___ U.S. at ___, n. 2, 116 S.Ct. at 2146, n. 2.
In the context of this case, Halper does not apply. It would be impossible to apply a methodology which involves an accounting of the Government's damages and costs to determine whether the suspension of one's driving privileges is remedial or punitive.
Austin v. United States is equally inapplicable. These consolidated actions involve the Double Jeopardy Clause. Ursery observed that Austin did not involve the Double Jeopardy Clause. Instead, "Austin was decided solely under the ... Eighth Amendment, a constitutional provision which we never have understood as parallel to, or even related to, the Double Jeopardy Clause of the Fifth Amendment." Ursery, ___ U.S. at ___, 116 S.Ct. at 2146.
Ursery reaffirmed and adopted the analytical framework announced in United States v. One Assortment of 89 Firearms, 465 U.S. 354, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984). A two-part test is used. First, are the proceedings intended to be criminal or civil in nature? Second, are the proceedings so punitive in form and effect as to render them criminal, despite legislative intent to the contrary? To satisfy the latter prong of the two-part test, the "clearest proof" is necessary to show that the sanction is criminal and not civil.[2]Ursery, ___ U.S. at ___-___, 116 S.Ct. at 2147-48.
The answer to the initial inquiry is simple. Butler stated that "a driver's license suspension is a civil, not punitive, measure." Id. at 795. Having so concluded, where, then, is the "clearest proof" that the suspension proceedings may not legitimately be viewed as civil in nature and that they are, in fact, criminal? We have examined the record and the statutes, La.R.S. 32:667 and 668, and have not discerned the existence of that "clearest proof." Ursery does not lend guidance to what constitutes "clearest proof." Like Ursery, however, we have to admit that "... the fact that a [driver's license suspension] has some connection to a criminal violation is far from the `clearest proof' necessary to show that a proceeding is criminal." Id. at ___, 116 S.Ct. at 2149.
The defendants submit attractive arguments which suggest that these suspension proceedings are not remedial and are the functional equivalent of a criminal proceeding. For example, La.R.S. 32:667 and 668 permit one who transgresses the statutory *1013 provisions to drive under a temporary permit for a period not exceeding thirty days and to obtain a restricted license once certain conditions are met. Additionally, under La.R.S. 32:415.1, a transgressor may also be eligible for an economic hardship license. The proceedings, the defendants argue, therefore, do not accomplish the objective of removing an intoxicated driver from the state's highways. Certainly, these are punitive effects. However, while having certain punitive aspects, La.R.S. 32:667 and 668 "serve important nonpunitive goals." Ursery, ___ U.S. at ___, 116 S.Ct. at 2148. (See Butler, 609 So.2d at 792, 796-797 for a discussion of these nonpunitive goals). These effects, while punitive, are not the "clearest proof" necessary to show that these proceedings are criminal in nature.

CONCLUSION
For the foregoing reasons, the writ application of James A. Sonnier, defendant-relator, is denied. This case is remanded to the trial court for proceedings consistent with the views expressed herein.
WRIT DENIED. REMANDED TO TRIAL COURT.
NOTES
[1] Two other cases with the identical issue were consolidated with this one. They are: City of Lake Charles v. James Landreth, K95-1090 (La. App. 3 Cir. (8/28/96)); 679 So.2d 1029; City of Lake Charles v. Joseph Sharp, K95-1017 (La.App. 3 Cir. (8/28/96)); 680 So.2d 116.
[2] To that extent, the conclusion in Kurth Ranch that the proceeding involved in that case was the functional equivalent of a successive criminal prosecution makes the analysis of Kurth Ranch more applicable to this case than Austin or Halper.