535 So.2d 433 (1988)
STATE of Louisiana, Plaintiff-Respondent,
v.
Leo FONTENOT, Defendant-Relator.
No. K87-826.
Court of Appeal of Louisiana, Third Circuit.
August 18, 1988.
Michael F. Kelly, Asst. Dist. Atty., Marksville, for defendant-relator.
J. Edward Knoll, Dist. Atty., Marksville, for plaintiff-respondent.
Before STOKER, DOUCET and KING, JJ.
STOKER, Judge.
In this case we consider a res nova question involving the nature of mayor's courts in Louisiana and their relationship to the judicial system in general. We are particularly confronted with the question of what appellate rights may be afforded a defendant in a mayor's court who pleads guilty to an offense cognizable by such a court. The defendant in this case pleaded guilty to a charge brought in a mayor's court and sought an appeal after being sentenced. The question we must answer is whether the statutory trial de novo on appeal to district courts granted to persons convicted and sentenced in a mayor's court operates to allow the defendant to start afresh in the district court. Stated another way: Is an accused who pleads guilty to a charge in a mayor's court precluded from appealing to a district court? The pertinent Louisiana statute law provides that in criminal cases where a person is subjected to imprisonment or forfeiture of property an accused may appeal from a mayor's court to the district court and such appeal "shall be tried de novo." In the case sub judice the appellant was denied an appeal on a de novo basis, both by the mayor's court and the district court.
We granted a writ in this case for the purpose of considering the question noted above.

*434 FACTS AND PROCEEDINGS IN THE LOWER COURTS
This case originated in the Mayor's Court for the Town of Cottonport, Louisiana.
On May 20, 1987 relator pleaded guilty to a charge of criminal mischief[1] pursuant to a plea bargain in which another charge was dropped. The magistrate of the Cottonport Mayor's Court sentenced relator to a fine of $246, $42 court costs and restitution to the victim of $1,500, in default of which he would serve 30 days in jail. On May 28, 1987 relator moved for an appeal by trial de novo to the Twelfth Judicial District Court urging application of LSA-R.S. 13:1896 A. The magistrate refused to sign the appeal order for a trial de novo and issued a warrant for defendant's arrest for failure to pay his fines.
Relator filed a writ of mandamus with the Twelfth Judicial District Court asking that the Cottonport magistrate be ordered to grant the appeal for a trial de novo. On July 10, 1987 the district court heard arguments and ruled against defendant recalling the writ of mandamus and dismissing the appeal. Relator has sought review of the district court's denial in this court, assigning as his sole assignment of error the following:
The trial court erred in refusing to order the Cottonport Mayor's Court Magistrate to recognize an appeal of Leo Fontenot's conviction in the Mayor's Court and in failing to grant Leo Fontenot a trial de novo as required by LSA-R.S. 13:1896.
The statutory language we must construe, i.e., LSA-R.S. 13:1896, provides:
§ 1896. Appeals in criminal cases; return day
"A. Mayor's courts and justice of the peace courts. (1) In criminal cases, the district courts have appellate jurisdiction over all appeals from orders of justices of the peace requiring a peace bond, and, except as otherwise provided by law, over all appeals from a mayor's court where a person has been subjected to imprisonment or a forfeiture of rights or property. Appeals from mayor's courts and justice of the peace courts, as provided for herein, shall be tried de novo. Any forfeiture or penalties collected by the district court on appeal from a conviction of a municipal ordinance shall be distributed and disbursed to the municipality.
"(2) Appeals in all criminal cases tried in mayor's courts and from orders of a justice of the peace requiring a peace bond shall be taken within the time prescribed in the Louisiana Code of Criminal Procedure."
No problems arise from this statute with reference to mayor's court cases actually tried which result in subjecting a defendant "to imprisonment or forfeiture of rights or property." Subparagraph (1) puts appeals with the district courts and grants the de novo trial without distinction between cases tried and those disposed of through guilty pleas. Only in subparagraph (2), relating to the time within which appeals may be taken, are the words "cases tried" used. "Trial" obviously implies that a plea of not guilty was entered. Here, however, we are apparently faced with a res nova situation: defendant-relator's claim that he is entitled to a de novo trial despite his entry of a plea of guilty in the mayor's court. Were it not for the fact that the guilty plea was made and accepted in a mayor's court of this State, we could readily conclude that defendant-relator was not entitled to an appeal. We would construe the plea as a waiver of rights which might be asserted on appeal.
Guilty pleas normally act as a waiver of all nonjurisdictional pre-plea defects that are not reserved, including insufficiency of the evidence. State v. Champagne, 461 So.2d 1059 (La.App. 3d Cir. 1984), appeal after remand for resentencing, 506 So.2d 1377 (La.App. 3d Cir.1987); State v. Coats, 260 La. 64, 255 So.2d 75 *435 (1971). A great measure of finality should be afforded to guilty pleas. State v. Bosworth, 451 So.2d 1070 (La.1984); Blackledge v. Allison, 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). Moreover, the testing of a sentence followed by an attempt to withdraw the guilty plea upon dissatisfaction with the sentence received has been long regarded as an impermissible ground to withdraw the plea. State v. Willis, 457 So.2d 861 (La.App. 3d Cir.1984); State v. Boatright, 406 So.2d 163 (La.1981); State v. Deakle, 372 So.2d 1221 (La.1979); State v. Robinson, 311 So.2d 893 (La.1975); State v. Johnson, 260 La. 902, 257 So.2d 654 (1972).

INTERPRETATION OF LSA-R.S. 13:1896
We granted the writ in this case and set the matter down for briefing and oral argument to consider whether the nature of proceedings in mayor's courts and their place in the State's judicial system required a different treatment of guilty pleas in such courts. Preliminarily we must determine whether LSA-R.S. 13:1896, in its own language, is restricted in application to cases "tried" in mayor's courts so that, by some literal construction, the statute should be held to be inapplicable to convictions and sentences which come as a result of pleas of guilty. We determine that the statute does not by its language indicate one way or the other that it should be restricted to cases "tried" in mayor's courts. Consequently, we pass on to the question of whether policy reasons dictate a handling of guilty pleas entered in mayor's courts differently from that accorded in other courts of our judicial system. This consideration requires that we look at the nature of mayor's courts and laws creating and empowering them.

NATURE, POWER AND PLACE OF MAYOR'S COURT
In Sledge v. McGlathery, 324 So.2d 354 (La.1975) the Louisiana Supreme Court held that mayor's courts possessed the inherent power of courts. The question in the case, answered affirmatively, was whether a judge sitting as a mayor's court in Louisiana has the power and authority to appoint counsel to represent an indigent defendant charged under a municipal criminal code of the jurisdiction. The following selected quotations are from the Supreme Court's opinion in Sledge v. McGlathery:
La.R.S. 33:441 sets out the jurisdiction of the Mayor's court:
"Except as provided in Chapter 7 of Title 13, there shall be a mayor's court in the municipality, with jurisdiction over all violations of municipal ordinances. The mayor may try all breaches of the ordinances and impose fines or imprisonment, or both, provided for the infraction thereof."
These courts remain in existence today pursuant to Article V, Section 20 of the Louisiana Constitution of 1974 which provides in pertinent part that "Mayors' courts ... existing on the effective date of this constitution are continued, subject to change by law."
[1] Article V, Section 2 of the Louisiana Constitution of 1974, in pertinent part, guarantees that "[a] judge may issue... all ... needful ... orders ... in aid of the jurisdiction of his court." One such order would necessarily be appointment of counsel for indigents because Article I, Section 13 of the Constitution, provides:
"... At each stage of the proceedings, every person is entitled to assistance of counsel ... appointed by the court if he is indigent and charged with an offense punishable by imprisonment...."
[2-4] There is therefore little dispute that Mayor's courts are courts which have jurisdiction to conduct trials, determine guilt, and impose sentences including fines and imprisonment for breach of municipal ordinances. Judges of such courts may therefore issue needful writs in aid of their jurisdiction, including the appointment of counsel for an indigent charged with an infraction of an ordinance if that infraction may be punished with imprisonment.

*436 The need to have indigent defendants who are confronted with the possibility of imprisonment represented by counsel was made constitutionally imperative by the United States Supreme Court in Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972).
* * * * * *
Mayor McGlathery's appointment of respondent Claude R. Sledge was therefore not only within his power and authority, but legally and constitutionally required, unless one or more of the arguments posed by respondent are found to have merit.
* * * * * *
[7] Secondly, respondent Sledge asserts that the resolution of the problem of appointed counsel in accordance with the Argersinger mandate is exclusively a problem for the Louisiana legislature. Independent of the presence of specific laws on the subject, we believe that courts and judges have the inherent power, as well as the constitutional authority, to issue all meanful writs in aid of the jurisdiction of their courts. La. Const. art. 5, § 2. Such power and authority is essential to the existence of courts.
Relator complains additionally that because Mayor's courts are not governed by the Code of Criminal Procedure, Article 17 of the Code, which describes the inherent power of courts, is therefore inapplicable. And akin to this he complains that lawyers are ill-equipped to practice in Mayors' courts because lawyers do not have available the tools, included in the Code of Criminal Procedure, with which to work. We find no merit in this contention.
[8, 9] The inherent power of courts, fortified in this instance by a provision of the 1974 Louisiana Constitution alluding to Mayors' courts as "courts," and for the reasons expressed hereinabove, have the inherent power of courts, irrespective of the applicability of the Code of Criminal Procedure. While a Mayors' court may not be a court of record, it is a court established by our Constitution and has, at the very least, the power of a sovereign to imprison. (Footnotes omitted.)
The constitutional and statutory bases referred to in Sledge v. McGlathery have not changed since the case was decided. As was noted above in quotations from that case the Louisiana Constitution of 1974 recognizes the continued existence of mayor's courts but says nothing else regarding them. Their statutory existence is provided for in Sub-part G of Title 33 of the Revised Statutes relating to "Municipal Courts" and is contained in LSA-R.S. 33:441 which reads:
§ 441. Mayor's court
A. Except as provided in Chapter 7 of Title 13, there shall be a mayor's court in the municipality, with jurisdiction over all violations of municipal ordinances. The mayor may try all breaches of the ordinances and impose fines or imprisonment, or both, provided for the infraction thereof. Notwithstanding any other provision of law to the contrary, the mayor may also impose court costs not to exceed fifteen dollars for each offense, as defined by ordinance, on any defendant convicted of a violation of a municipal ordinance.
B. Notwithstanding any other provision of law to the contrary, the board of aldermen in its discretion may, upon request of the mayor, appoint an attorney who shall be designated as court magistrate and who shall serve at the pleasure of the mayor and may from time to time be designated by the mayor to serve in his stead as the presiding official over the mayor's court. Whenever the magistrate is so designated by the mayor to preside over the mayor's court, he shall exercise the powers and authority of the mayor over said court. The board of aldermen shall fix and pay the salary of the magistrate, if one is appointed.
C. The mayor shall have the power of a committing magistrate.
To complete our consideration of mayor's courts we note that, with two specified exceptions, the Code of Criminal Procedure is not applicable to mayor's courts. LSA-C.Cr.P. art. 15 states the types of courts to *437 which the Code is applicable (district, city, parish, juvenile and family courts), but mayor's courts are not included. Two exceptions in which the Code of Criminal Procedure does apply to mayor's courts relate to peace bonds (LSA-C.Cr.P. art. 26, et seq.) and authority to fix bail (LSA-C.Cr.P. art. 315). We note in the definition contained in Title XXXII of the Code of Criminal Procedure, Art. 931, language which specifically excludes mayor's court from applicability of the Code but does include "a mayor of a mayor's court" in the definition of magistrate.
Is there a body of statutory law which governs mayor's courts? We find none. Other than LSA-R.S. 33:441, the only statutory provision relating to mayor's courts which we find is LSA-R.S. 13:1896 A providing that district courts have appellate jurisdiction over appeals from mayor's courts. That is the statute on which we focus in this case. This provision is oddly placed in Chapter 7 of Title 13 of the Revised Statutes which appears to be exclusively concerned with city courts.[2] We conclude that except for the statute creating mayor's courts, LSA-R.S. 33:441 (and related Section 442) and the provision of appeals, LSA-R.S. 13:1896, mayor's courts appear to be on their own. They are, of course, under constitutional restraints, and in this case we will give attention to constitutional safeguards relative to the entry of guilty pleas and how constitutional principles affect the holding or not holding of trials de novo in cases where a guilty plea has been entered in a mayor's court.

CONSIDERATIONS FOR GRANTING A DE NOVO TRIAL
On the basis of the above discussion we conclude that policy considerations alone should govern the question presented: should persons who plead guilty in mayor's courts be permitted to avail themselves of a trial de novo under LSA-R.S. 13:1896 A? Subparagraph (1) of that statute mandates a trial de novo through use of the word "shall" without reference to the type of proceeding had in the mayor's court. No distinction is made by the statute between appeals from trial convictions and appeals from guilty pleas. Subparagraph (2) does refer to "criminal cases tried in mayor's courts," but we have no reason to believe use of the word "tried" requires that it be given a technical and narrow construction. We conclude that a broad construction will permit appeals from cases in which a guilty plea has been entered.

I.
Appeals de novo from guilty pleas in mayor's courts must be permitted primarily to insure that defendants are afforded procedural safeguards for their constitutional rights. The Code of Criminal Procedure, applicable to other courts of the *438 State, are not applicable to mayor's courts. Consequently, an accused charged in a mayor's court is not protected by the features of that code designed to protect the constitutional rights of accused persons. In fact, mayor's courts are not subject to any code of criminal procedure.

II.
Although general constitutional principles should apply to mayor's courts, there will ordinarily be no way in any appeal for the appellate court to determine whether constitutional guarantees were in fact met. In the case before us there is no transcript of the mayor's court proceeding, and, therefore there is no way for the district court, sitting as an appellate court, to scrutinize a record to insure that the defendant's guilty plea was knowingly and voluntarily made. The magistrate of the mayor's court imposed a 30-day jail sentence to be served if the defendant defaulted in paying the fine and court costs. The importance of having a record from a criminal court to affirmatively show adherence to constitutional requirements was emphasized by the Louisiana Supreme Court in City of Monroe v. Wyrick, 393 So.2d 1273 (La.1981). Affording constitutional guarantees with reference to mayor's court proceedings is particularly significant in view of the fact that mayors and boards of aldermen define offenses over which mayor's courts will have jurisdiction and there is apparently a hiatus in the law which fails to provide a limit or restriction on what a governing authority in a mayor's court municipality may define as an offense. See State v. Foy, 401 So.2d 948 (La.1981) construing LSA-R.S. 33:401.
Article 777 of the Code of Criminal Procedure, not applicable to mayor's courts, requires that a record of trial proceedings be made "in accordance with other provisions of law." Article 553(A) requires that pleas be immediately entered in the minutes of court. See also LSA-R.S. 13:961(C).
While it is entirely possible that a mayor or magistrate sitting as a mayor's court may diligently and competently conduct criminal proceedings in full compliance with constitutional requirements, such as properly "boykinizing" persons who enter guilty pleas, the guarantee that they do so is weakened by the fact that such courts are outside of the main stream of our State criminal justice system. There is no evidence before us that the magistrate in the case sub judice failed to properly advise the defendant of his rights and there is no evidence that a record was not made. If there is a record and it affirmatively shows that defendant was accorded all rights, it might make a difference in this case. In any event we indulge in the fear that most mayor's courts may not be conducted so as to present the full panoply of a defendant's constitutional rights. Consequently, allowing an appeal de novo is the most certain way to guarantee accused persons the observance of their rights.

III.
LSA-R.S. 33:441, which provides for the establishment of mayor's courts, provides in Subparagraph B that the board of aldermen may appoint an attorney, upon request of the mayor, who may serve in the stead of the mayor as magistrate of the mayor's court with all the power and authority of the mayor. This authority is specific in the case of the Town of Cottonport. LSA-R.S. 33:441.8. The case sub judice was heard by and acted upon by an attorney magistrate, so the magistrate was presumptively qualified to fulfill a judicial role. However, it is not required that a board of aldermen appoint an attorney. Therefore, a mayor acting as magistrate may possibly not have the legal training and qualifications one would have to have in order to accord accuseds who appear before the mayor's courts those constitutional rights to which they are entitled. This court in Broussard v. Town of Delcambre, 458 So.2d 1003 (La. App. 3d Cir.1984) found that no constitutional violations occur when an accused, subject to possible imprisonment, is tried before a non-lawyer magistrate when a later trial de novo is available. In order to give this principle full effect we conclude that it should apply to all criminal cases emanating from mayor's courts whether or *439 not the magistrate is a trained attorney and regardless of whether the conviction and sentence resulted from trial or the entry of a plea of guilty.

IV.
Although Louisiana provisions contained in the constitution, codes and statutes of the State are our primary guide in the resolution of the issue presented by the case before us, a look elsewhere is in order. This is especially so as our previous discussion shows little or nothing concerning theory and practice for mayor's courts in this State.
We note that other states use a "two-tier system" for adjudicating less serious criminal cases. After conviction at the first tier level, the defendant has a right to a trial de novo in a court of general jurisdiction. As to the trial de novo in a two-tier system, the United States Supreme Court stated in Colten v. Commonwealth of Kentucky, 407 U.S. 104, 119, 92 S.Ct. 1953, 1961, 32 L.Ed.2d 584 (1972):
"The trial de novo represents a completely fresh determination of guilt or innocence.
* * * * * *
"In reality his [defendant's] choices are to accept the decision of the judge and the sentence imposed in the inferior court or to reject what in effect is no more than an offer in settlement of his case and seek the judgment of judge or jury in the superior court, with sentence to be determined by the full record in that court."
See also, North v. Russell, 427 U.S. 328, 96 S.Ct. 2709, 49 L.Ed.2d 534 (1976) and Justices of Boston Municipal Court v. Lydon, 466 U.S. 294, 104 S.Ct. 1805, 80 L.Ed.2d 311 (1984).

CONCLUSION
For all of the foregoing reasons assigned, we hold that defendant is entitled to a trial de novo on appeal to the district court from a guilty plea and conviction entered in a mayor's court, under LSA-R.S. 13:1896A.

COURT COSTS
We note from the pleadings filed by defendant in the district court for a writ of mandamus that the court costs assessed to defendant by the mayor's court were illegally excessive under LSA-R.S. 33:441(A), which limits the costs assessable to a party in a mayor's court criminal proceedings to $15 for each offense, as defined by ordinance. Two charges were brought against defendant and he was convicted of one. However, no evidence is before us that defendant has actually paid the $42 in court costs assessed to him.

DECREE
For the reasons assigned, the writ is made peremptory and the case is remanded to the district court for further proceedings consistent with the views expressed herein.
WRIT MADE PEREMPTORY; REMANDED.
NOTES
[1] Relator cites no ordinance or statute as the basis for the conviction and his attorney failed to supply this information despite several inquiries. It is, therefore, presumed that the Cottonport City Court is a mayor's court under La.R.S. 33:441 and 33:441.8 so that La.R.S. 13:1896 A is arguably applicable and that a municipal ordinance was the charge so as to supply jurisdiction to the mayor's court under La.R.S. 33:441.
[2] We note some imprecision in statutory language attributable to the use of the term "municipal court" in some sources. Title 33, which contains the provision establishing mayor's courts (LSA-R.S. 33:441), is found under Part I, Mayor and Board of Aldermen, Sub-part G entitled "MUNICIPAL COURTS." Mayor's courts are the only courts provided for in Sub-part G. The words establishing mayor's courts is preceded by the exclusionary words: "Except as provided in Chapter 7 of Title 13...." Chapter 7 of Title 13 applies almost entirely to city courts. Part I which has general application is entitled "CITY AND MUNICIPAL COURTS, NEW ORLEANS EXCEPTED." It is difficult to read Part I as having application to mayor's courts, but the scope of provisions section, LSA-R.S. 13:1871, provides: "For the purposes of this Part, the term `city court' includes `municipal courts.'" Moreover Part I contains LSA-R.S. 13:1896 A which provides for appeals from mayor's courts and justice of the peace courts. We note, however, that LSA-R.S. 13:1896 B provides for appeals from "City, parish and municipal courts." Since the term "municipal court" is employed in paragraph B in contradiction from mayor's courts and justice of the peace courts, does this mean that in Title 13 mayor's courts are not encompassed under the term "municipal court."?

The reservation and exceptions contained in C.Cr.P. art. 931, et seq. seem to be designed to exclude mayor's courts from the meaning of the term "municipal court."
We feel little help and some confusion in attempting to find significance in, and guidance from, the use of the term "municipal court." Even if Chapter 7 of Title 13 applies generally to mayor's courts, and not just to sections specifically so providing, such as Section 1896 A, there is little in the chapter which is relevant to the issue we decide in this case.