STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

03-1383

CITY OF BROUSSARD

VERSUS

MICHAEL WATKINS
d/b/a MICHAEL'S INTERNATIONAL

**********
APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 98718-I
HONORABLE THOMAS R. DUPLANTIER, DISTRICT JUDGE
BROUSSARD MUNICIPAL COURT,
PARISH OF LAFAYETTE, NO. 2002-157
HONORABLE CAROL SPELL, MAGISTRATE JUDGE
**********

GLENN B. GREMILLION
JUDGE

**********

Court composed of Glenn B. Gremillion, Billy Howard Ezell, and *Arthur J. Planchard, Judges.

* Honorable Arthur J. Planchard, Retired, participated in this decision by appointment of the Louisiana Supreme Court as *Judge Pro Tempore.*

REVERSED AND REMANDED.

Edward B. Broussard
Prosecutor, City of Broussard
P. O. Box 7
Abbeville, LA 70511-0007
(337) 893-3423
Counsel for: Plaintiff/Appellee
    City of Broussard

**Ronny Melebeck**
**Attorney at Law**
**113 E. Lafayette Street**
**Abbeville, LA 70510**
**(337) 893-5776**
**Counsel for Plaintiff/Appellee**
**City of Broussard**

**Frank Edward Barber**
**David Groner, P.L.C.**
**P. O. Box 9207**
**New Iberia, LA 70562-9207**
**(337) 364-3629**
**Counsel for Defendant/Appellant**
**Michael Watkins**

GREMILLION, Judge.

In this case, the defendant, Michael Watkins, appeals the decision of the district court which suspended his occupational license for fifteen days. For the following reasons, we reverse the ruling of the trial court and remand for further proceedings.

## FACTUAL BACKGROUND

Watkins was issued two misdemeanor summonses dated January 2, 2002, and March 22, 2002, for violations of Ordinance 144 at his place of business, Michael's Gentlemen's Club. Broussard, LA, Ordinance 144 (Mar. 14, 1995). There are court minutes in the record from the magistrate court proceedings that appear to have been filed as attachments to Watkins' Motion and Order for Appeal to the district court. The minutes indicate Watkins was arraigned on January 31, 2002, and he entered a plea of not guilty. On May 30, 2002, a motion to quash was denied. The magistrate court minutes, dated January 30, 2003, indicate Watkins again pled not guilty, and trial of motions was set for March 27, 2003. On that date, a motion to dismiss was heard and denied. The next minute entry, dated April 24, 2003, states, "[p]lead (sic) not guilty guilty (sic) the judgement (sic) date is 4/24/03 occupational license is to be suspended for 15 days effective immediately upon conviction becoming final (after all appeals have been exhausted); verdict is combined for both convictions." Although a transcript of the March 27, 2003 hearing on a motion to dismiss/motion to quash appears in the record, there is no trial transcript in the record.[1] The matter was appealed to the district court and that court affirmed the

---

[1] We note that the March 27, 2003 "transcript" is titled "Minute Report," but it contains all of the statements made by the parties, as well as the testimony of five witnesses.

1

decision of the magistrate court "suspending the occupational license for 15 days effective immediately." Watkins is before this court seeking review of the district court's ruling.

## CRIMINAL VERSUS CIVIL CASE

Before addressing the assignments of error raised by Watkins, it is necessary to discuss whether this case should be treated as a civil or criminal matter. If the proceedings are civil, they can continue as an appeal, but, if they are criminal, they would have to proceed as an application for supervisory writs. We note that, from the outset, this case has been treated as a criminal matter by the lower courts. Watkins was charged by affidavit (misdemeanor summons) and was referred to in the court minutes as "the accused." Additionally, the minutes indicate Watkins was "arraigned" and pled "not guilty." There is also reference to the "verdict" and "conviction" in the court minutes. Furthermore, on appeal to the district court, that court stated Watkins was "found guilty" and a "sentence" was imposed.

Although both parties refer to this as a criminal matter and neither party has questioned whether this case is criminal or civil, we find this to be a civil proceeding. Although we could find no cases directly on point, we located several cases that provide guidance in assessing whether a proceeding is a criminal or civil matter.

In *State v. Page*, 332 So.2d 427 (La.1976), the supreme court was called upon to determine whether a license revocation proceeding under the Motor Vehicle Habitual Offender Law was civil or criminal. In addressing this issue, the supreme court stated:

2

Factors which militate in favor of the conclusion that the proceeding is civil are these:

1) The Act directs that the petition be filed, not in the parish where the offenses were committed, as would be the case in a criminal action (La.Const. art. I, § 16 (1974); C.Cr.P. art. 611) or a criminal enhancement proceeding [R.S. 15:529.1(D)], but in the parish of the defendant's residence.

2) An appeal taken from any final action or judgment entered under the provisions of the Act is in the same manner and form as appeals in civil actions. R.S. 32:1478.

3) The fundamental purpose of the Act is to promote highway safety by denying driving privileges to habitual traffic law offenders (32:1471), a distinctly non-criminal objective.

One purpose of the Act is, of course, to discourage repetition of criminal acts, but this alone is not sufficient to give the Act a penal character since deterrence of wrongful criminal conduct while often an object of criminal statutes may be an objective of a regulatory statute as well. *See McDermott v. Wisconsin*, 228 U.S. 115, 33 S.Ct. 431, 57 L.Ed. 754 (1913); *United States v. Kordel*, 164 F.2d 913 (7th Cir. 1947), aff'd, 335 U.S. 345, 69 S.Ct. 106, 93 L.Ed. 52 (1948).

There are, of course, features of the Act not now before us which are penal, or criminal. For instance, 32:1480 may result in imprisonment for driving while classified as a habitual offender. However, this is an independent feature of the Act separate and distinct from the revocation proceeding.

*Id.* at 429.

After discussing two Louisiana appellate court cases, which hold that a revocation proceeding is civil, and citing numerous other state supreme court cases finding similar proceedings to be civil actions, the supreme court noted that proceedings to revoke local driver's licenses are "generally regarded as civil proceedings." *Id.* at 429-30. The supreme court further stated:

3

License revocation procedures, even those following conviction for a specific traffic violation, have been considered civil actions by Louisiana courts. Under La.R.S. 32:667, 668 which provides for suspension of license after refusal to take a blood alcohol test, the revocation procedure is unquestionably civil. *Culp v. Department of Public Safety*, 288 So.2d 680 (La.App. 4th Cir. 1974); *Gardner v. State, Department of Public Safety*, 198 So.2d 184 (La.App. 3rd Cir. 1967). Moreover, the revocation of license under R.S. 32:414 also constitutes a civil sanction, in certain circumstances, against motorists who are convicted of driving while intoxicated. *Harrison v. State, Department of Public Safety*, 298 So.2d 312 (La.App. 4th Cir. 1974).

Although due process is required before a driver's license may be revoked, *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); *Smith v. Department of Public Safety*, 254 So.2d 515 (La.App.4th Cir. 1971), it does not necessarily follow that the revocation of a license constitutes criminal punishment. On the contrary, the revocation of one's license to operate a motor vehicle under the habitual offender law does not constitute punishment. Rather, it is a civil measure considered necessary by the Legislature to adequately provide for public safety. It is a finding by a court that the person in question is no longer fit to enjoy the privilege of driving a motor vehicle. The result of the finding is to deny the person the right to drive on the public highways of the state; he suffers no loss of liberty, no incarceration nor fine.

We hold therefore that the district attorney's petition to have defendant declared an habitual offender under the Motor Vehicle Habitual Offender Law, with the attendant minimum five year revocation of driving privileges, is a civil proceeding.

*Id.* at 430. (footnote omitted).

Later, in *Butler v. Department of Public Safety and Corrections,* 609 So.2d 790 (La.1992), the supreme court held a driver's license suspension is a civil matter. The court "conclude[d] that a driver's license suspension is a remedial measure which attempts to protect society from the hazards posed by drunk drivers by removing the driving privileges of those who have been convicted of driving while intoxicated." *Id*. at 796.

4

In *State v. Sonnier*, 95-1103 (La.App. 3 Cir. 8/28/96), 679 So.2d 1011, we were asked to determine whether prosecuting someone for driving while intoxicated after their driving privileges had been administratively suspended constituted double jeopardy. In our opinion, we wrote:

[*United States v.*] *Ursery* [518 U.S. 267, 116 S.Ct. 2135 (1996)] reaffirmed and adopted the analytical framework announced in *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984). A two-part test is used. First, are the proceedings intended to be criminal or civil in nature? Second, are the proceedings so punitive in form and effect as to render them criminal, despite legislative intent to the contrary? To satisfy the latter prong of the two-part test, the "clearest proof" is necessary to show that the sanction is criminal and not civil. *Ursery*,[518] U.S. at [289], 116 S.Ct. at 2147-48.

The answer to the initial inquiry is simple. *Butler* stated that "a driver's license suspension is a civil, not punitive, measure." *Id*. at 795. Having so concluded, where, then, is the "clearest proof" that the suspension proceedings may not legitimately be viewed as civil in nature and that they are, in fact, criminal? We have examined the record and the statutes, La.R.S. 32:667 and 668, and have not discerned the existence of that "clearest proof." *Ursery* does not lend guidance to what constitutes "clearest proof." Like *Ursery*, however, we have to admit that ". . . the fact that a [driver's license suspension] has some connection to a criminal violation is far from the 'clearest proof' necessary to show that a proceeding is criminal." *Id*. at [292], 116 S.Ct. at 2149.

The defendants submit attractive arguments which suggest that these suspension proceedings are not remedial and are the functional equivalent of a criminal proceeding. For example, La.R.S. 32:667 and 668 permit one who transgresses the statutory provisions to drive under a temporary permit for a period not exceeding thirty days and to obtain a restricted license once certain conditions are met. Additionally, under La.R.S. 32:415.1, a transgressor may also be eligible for an economic hardship license. The proceedings, the defendants argue, therefore, do not accomplish the objective of removing an intoxicated driver from the state's highways. Certainly, these are punitive effects. However, while having certain punitive aspects, La.R.S. 32:667 and 668 "serve important nonpunitive goals." *Ursery*, [518] U.S. at [290], 116 S.Ct. at 2148. (*See Butler*, 609 So.2d at 792, 796-797 for a discussion of these nonpunitive goals). These effects, while punitive, are not the "clearest

5

proof" necessary to show that these proceedings are criminal in nature.
*Id.* at 1012-13 (footnote omitted).

Likewise, contempt proceedings are considered civil, if the intent of the court is to coerce a defendant into obeying an order, and criminal if the intent is to punish the defendant. *See Dauphine v. Carencro High School*, 02-2005 (La. 4/21/03), 843 So.2d 1096.

In March 1995, the City of Broussard adopted Ordinance No. 144, which prohibits "exotic, nude, semi-nude and topless dancing" at businesses required to hold an alcoholic beverage permit.[2] The penalties for violations range from a fifteen day

---

[2] The ordinance reads in full:

SECTION I.  RULES, REGULATIONS AND REQUIREMENTS

Each and every person, firm, partnership or corporation engaging in the business of selling, either at retail or wholesale, any beverages of high alcoholic content or any beverages of low alcoholic content, holding a valid permit authorizing such sale issued by the Town of Broussard for consumption on or off the premises of such businesses, and each and every person, firm, partnership or corporation engaging in any business wherein the consumption of beverages of high alcoholic content or beverages of low alcoholic content are permitted on the premises of such business, though not purchased therein, shall be subject to and shall abide by the following rules, regulations, restrictions and requirements, to-wit:

A)  It shall be unlawful and may be a cause for the suspension, termination or revocation of any permit or license issued by the Town of Broussard to any person, firm, partnership or corporation, if such person, firm, partnership or corporation allows exotic, nude, semi-nude, or topless dancing in or near the business premises where alcoholic beverages are sold or consumed.  For purposes of this subsection, "exotic, nude, semi-nude or topless dancer" is defined as a person of either gender hired or in any way compensated, whether by salary, commission, gratuities from customers, or otherwise, to dance, gyrate, twist or otherwise engage in any other physical performance in a nude condition in or on any business premises required to possess an alcohol beverage permit; and "nude condition" is defined as the display or exposure, with less than a full opaque covering, of any portion of a person's genitals, pubic area, buttocks or that portion of the breast lower than the upper edge of the areola.

SECTION II.  VIOLATIONS AND PENALTIES

A)  In addition to the penalties otherwise provided by law, upon the first conviction of violating any of the provisions of this ordinance shall cause the violator's Certificate of Qualification and the permits required by Ordinance No. 84, as they apply to

6

suspension of the "Certificate of Qualification and the permits required by Ordinance No. 84, as they apply to alcohol beverage permits" to revocation of the certificate and permits depending on the number of "conviction[s]."

The purpose of the ordinance is to promote the protection of the citizens and to maintain peace, which could be both a civil and criminal objective; however, violators suffer no loss of liberty, incarceration, or fine. In that regard, these proceeding are civil in nature. Further, we are guided by La.R.S. 33:4785(A) (footnotes omitted), which states:

> Any municipality may suspend or revoke within the corporate limits and any police jury or other governing authority of a parish may suspend or revoke within the limits of the parish, permits issued to retail dealers in beverages having an alcoholic content of more than six percent by volume for causes set forth in R.S. 26:88, 26:89; and may suspend or revoke permits issued to such retail dealers in beverages having an alcoholic content of not more than six percent by volume for causes set forth in R.S. 26:285, 26:286.

The causes set forth in La.R.S. 26:90[3] and 26:286[4] encompass the type of activity

---

alcohol beverage permits, shall be suspended for a period of fifteen (15) days, commencing the day following the final Judgment of said conviction.

B)  In addition to the penalties otherwise provided by law, upon the second conviction of violating any of the provisions of this ordinance, the violator's Certificate of Qualification and the alcohol beverage permits required by law shall be suspended for a period of thirty (30) days, commencing the day following the final Judgment of said conviction.

C)  In addition to the penalties otherwise provided by law, upon the third or subsequent conviction of violating any of the provisions of this ordinance, the violator's Certificate of Qualification and permits required by Ordinance No. 84 of the Broussard Code of Ordinances shall be revoked, effective the date following the final Judgment of said conviction.

[3] Title 26 of the Louisiana Revised Statutes of 1950, Liquors-Alcoholic Beverages, was amended and reenacted by Acts 1987, No. 696. La.R.S. 26:88 and 89 are now La.R.S. 26:90 and 91.

[4] Acts 1987, No. 696 also changed La.R.S. 26:285 and 286 to La.R.S. 26:286 and 287.

7

prohibited by the City of Broussard's ordinance.  Review of cases in which a permit

has been suspended or revoked is provided for in La.R.S. 33:4788, which reads:

> The holder of the permit who is aggrieved by a decision of the
> governing body of the municipality or parish or a municipal alcoholic
> beverage control board to suspend or revoke his permit, may within ten
> days of the notification of the decision take a devolutive appeal to the
> district court having jurisdiction of his place of business and on such
> appeal the trial shall be de novo.  Within ten calendar days from the
> signing of the judgment by the district court the municipality or parish
> governing authority, a municipal alcoholic beverage control board or the
> holder of the permit, as the case may be, may devolutively appeal from
> the judgment of the district court to the court of appeals as in ordinary
> civil cases.

Accordingly, this matter shall proceed as a civil appeal.

## TRIAL DE NOVO

Watkins claims the district court should have granted him a trial de novo

as required by La.R.S. 13:1896.  The City contends Watkins stipulated to the facts in

the magistrate's court and never requested a trial on the merits[5] either in the

magistrate court or the district court.  The City additionally notes that Watkins did not

object to the district court issuing a ruling on the record and that he actually prepared

the judgment for the district court's signature.  The City also argues that the only

defenses involved legal issues and Watkins offered no facts which were not contained

in the record.  Finally, the City argues Watkins, who claims he is not the license

holder, will suffer no loss as a result of the conviction because he has no license to

suspend.

---

[5]  We cannot tell from the record before us whether Watkins was convicted or pled guilty to
the violation.  However, in *State v. Fontenot*, 535 So.2d 433 (La.App. 3 Cir. 1988), this court held
that a defendant is entitled to a trial de novo even if he pled guilty.

We find that, under either La.R.S. 13:1896 or 33:4788, Watkins was *entitled* to a trial de novo by the district court. La.R.S. 13:1896 requires appeals from mayor's court and justice of the peace courts to be tried de novo, but this is not a statutory requirement for appeals of city, parish, and municipal court judgments. The minutes indicate the matter was heard by the Broussard Magistrate Court and the order for appeal to the district court is signed by Carol Spell, Magistrate Judge. Accordingly, the Broussard Magistrate Court is a mayor's court. *See* La.Code Crim.P. art. 931; La.R.S. 33:441; La.R.S. 33:441.26; and *City of Kenner v. Marquis*, 98-418 (La.App. 5 Cir. 6/4/98), 715 So.2d 85, *writ denied,* 98-1806 (La. 10/16/98), 726 So.2d 907.

As additional support for his position that he was entitled to a trial de novo, Watkins cites *North v. Russell*, 427 U.S. 328, 96 S.Ct. 2709 (1976). In *North*, the Supreme Court held that a two-tier court system in which criminal cases are heard first by a nonlawyer police court judge, when a later trial de novo is available, does not deny a defendant due process. The City contends that *North* is inapposite because in Louisiana, a mayor's court magistrate must be a licensed attorney. In the City of Broussard, at the mayor's request, the board of aldermen are to appoint an attorney to serve as court magistrate. The magistrate is to preside over the mayor's court at the request of the mayor. Although the Broussard magistrate is an attorney, as suggested by the City, this court has found that an accused is, nevertheless, entitled to a trial de novo:

> LSA-R.S. 33:441, which provides for the establishment of mayor's courts, provides in Subparagraph B that the board of aldermen may appoint an attorney, upon request of the mayor, who may serve in the stead of the mayor as magistrate of the mayor's court with all the

9

power and authority of the mayor. This authority is specific in the case of the Town of Cottonport. LSA-R.S. 33:441.8. The case *sub judice* was heard by and acted upon by an attorney magistrate, so the magistrate was presumptively qualified to fulfill a judicial role. However, it is not required that a board of aldermen appoint an attorney. Therefore, a mayor acting as magistrate may possibly not have the legal training and qualifications one would have to have in order to accord accuseds who appear before the mayor's courts those constitutional rights to which they are entitled. This court in *Broussard v. Town of Delcambre*, 458 So.2d 1003 (La.App. 3d Cir.1984) found that no constitutional violations occur when an accused, subject to possible imprisonment, is tried before a non-lawyer magistrate when a later trial *de novo* is available. In order to give this principle full effect we conclude that it should apply to all criminal cases emanating from mayor's courts whether or not the magistrate is a trained attorney and regardless of whether the conviction and sentence resulted from trial or the entry of a plea of guilty.

*State v. Fontenot*, 535 So.2d 433, 438-39 (La.App. 3 Cir. 1988).

While we are cognizant that *Fontenot* involves a criminal case, for the same reasons espoused therein, the protection of the defendant's constitutional rights, we hold that a defendant in a civil proceeding in mayor's court is entitled to a trial de novo. Thus, this case is remanded to the district court for further proceedings.

## PROOF BEYOND A REASONABLE DOUBT

Watkins contends the district court erred in finding the City proved its case beyond a reasonable doubt. He notes that the district court referred to incident reports and minutes of court, but did not refer to the actual trial transcript because a proper transcript was not prepared in the case.[6] In light of our decision that the case be remanded for a trial de novo in the district court, this assignment of error is rendered moot.

---

[6] The City claims the record contains a transcript of the "proceedings in the magistrate court, wherein all relevant evidence is included." The transcript referred to by the City is the transcript of the March 27, 2003 hearing on motions, not the trial transcript.

## CONSTITUTIONALITY OF THE ORDINANCE

Watkins contends the district court did not consider his motions concerning the constitutionality of Ordinance 144, noting that the judgment contains no discussions of this issue. We note that the district court's ruling does not mention the challenge to the constitutionality of the ordinance. We also note that there is no pleading challenging the constitutionality of the ordinance contained in the record before us.

In *State v. Williams*, 02-0898, 02-1030, p. 7 (La.10/15/02), 830 So.2d 984, 988, the supreme court stated:

> The general rule established by this Court is that issues not submitted to the trial court for decision will not be considered by the appellate court on appeal. Constitutional issues are no exception. *Vallo v. Gayle Oil Co.*, 94-1238 (La.11/30/94), 646 So.2d 859. This court has often cited *Lemire v. New Orleans Public Service, Inc.*, 458 So.2d 1308, 1311 (La.1984), as authority when not confronting claims of unconstitutionality where the claim is not the basis for this Court granting of the writ and the issue was not specifically pled in the trial court. *Id.* at 863. The constitutionality of the statute was clearly not the central focus of any hearing and the trial record does not contain any arguments on the topic. The only mention of the constitutionality of the statute was on appeal. Accordingly, we pretermit defendant's constitutional challenge as he failed to first raise the issue in the trial court.

In the present case, since there is no indication that the challenge to the constitutionality of the ordinance was raised in the district court, we will not address that issue.

## CONCLUSION

Initially, we find that this case is civil, and we considered it as an appeal. After having done so, we reverse the district court's ruling and remand the case to the district court for a trial de novo. The costs of this appeal are assessed to

11

the plaintiff-appellee, the City of Broussard.

**REVERSED AND REMANDED.**